STATE of Wisconsin, Plaintiff-Respondent,†

v.

Timothy L. FINLEY, Jr., Defendant-Appellant.

Court of Appeals

*No. 2014AP2488–CR. Submitted on briefs May 12, 2015.
—Decided September 30, 2015.*

**2015 WI App 79**

(Also reported in 872 N.W.2d 344.)

† Petition for Review Granted.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Martha K. Askins*, assistant state public defender, Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Brad D. Schimel*, attorney general, and *Thomas J. Balistreri*, assistant attorney general.

Before Stark, P.J., Hruz, J., and Thomas Cane, Reserve Judge.

¶ 1. HRUZ, J. Timothy L. Finley, Jr., entered a plea of no contest to first-degree recklessly endangering safety as domestic abuse, with penalty enhancers for habitual criminality and use of a dangerous weapon. The offense, including penalty enhancers, carried a maximum penalty of twenty-three and one-half years' imprisonment, but Finley was erroneously informed at the time of his plea (both by the circuit court and in the plea questionnaire/waiver of rights form) that his maximum exposure was nineteen and one-half years. Finley was sentenced to the actual maximum of twenty-three and one-half years' imprisonment, and he later sought to withdraw his plea.

¶ 2. In a previous appeal, we concluded Finley had established a *Bangert*[1] violation as a matter of law. *See State v. Finley*, No. 2013AP1846–CR, unpublished slip op. ¶ 16 (WI App Mar. 18, 2014) (*Finley I*). We therefore remanded with instructions for the circuit court to hold an evidentiary hearing at which the State was required to prove by clear and convincing evidence that, despite the *Bangert* violation, Finley knew the maximum penalty he faced at the time he entered his plea, such that his plea was entered knowingly, intelligently, and voluntarily. *Finley I*, ¶ 16. On remand, the State called only one witness, Finley's defense attorney at the time the plea was entered. Finley's attorney testified he had no specific recollection of telling Finley the correct maximum penalty and admitted he likely read to Finley the incorrect maximum penalty identified on the plea questionnaire/waiver of

---

[1] *See State v. Bangert*, 131 Wis. 2d 246, 389 N.W.2d 12 (1986).

rights form. The circuit court nonetheless entered an order concluding the State had satisfied its burden of showing by clear and convincing evidence that Finley's plea was entered knowingly, intelligently, and voluntarily. The court then "commuted" Finley's sentence to nineteen and one-half years' imprisonment in the interests of justice.

¶ 3. On appeal, Finley asserts the circuit court erroneously concluded the State met its burden of showing that his plea was knowing, intelligent, and voluntary at the time it was entered. The State has abandoned the argument that it satisfied its burden, and the State also does not directly respond to Finley's argument, and we deem the issue conceded. Instead, the State urges us to apply an alternative standard for plea withdrawal. Under the State's proposed standard, a defendant whose plea was not entered knowingly, intelligently, and voluntarily because the maximum possible penalty was more than he or she understood, is not entitled to withdraw the plea if the defendant's sentence is commuted—as was done here—to an amount equal to or less than the maximum sentence the defendant believed he or she could receive at the time of the plea. The State's proposed standard appears contrary to existing case law, which we are bound to follow. We therefore reject the State's argument, reverse the judgment and order, and remand to the circuit court for further proceedings with instructions to grant Finley's postconviction motion for plea withdrawal.

## BACKGROUND

¶ 4. A four-count criminal complaint was filed on June 7, 2011, charging Finley with first-degree reckless endangerment with use of a dangerous weapon, substantial battery, strangulation and suffocation, and false imprisonment, all charged as acts of domestic

abuse. An information filed later that month added the habitual criminality penalty enhancer under WIS. STAT. § 939.62.[2] The factual allegations involved an assault of Finley's live-in girlfriend.

¶ 5. Finley later reached an agreement with the State whereby he would plead no contest to the crime of first-degree reckless endangerment as domestic abuse, with penalty enhancers for habitual criminality and use of a dangerous weapon.[3] The maximum penalty for this offense with the applicable enhancers, as dictated by Wisconsin law, was a term of imprisonment not to exceed twenty-three years and six months.[4] However, the plea questionnaire/waiver of rights form completed by Finley's attorney identified the maximum penalty as "19 years, 6 months confinement."

¶ 6. At the plea hearing, Finley confirmed he understood the elements of the offense of first-degree reckless endangerment. The circuit court separately identified each aspect of the penalty structure for that offense, beginning with the "base penalty" of twelve and one-half years' imprisonment for first-degree reckless

---

[2] All references to the Wisconsin Statutes are to the 2013–14 version unless otherwise noted. WISCONSIN STAT. § 939.62 has not changed in any relevant way from the version applicable to Finley's offenses.

[3] Under the terms of the plea agreement, the remaining charges were to be dismissed and read in, and the State would cap its sentencing recommendation at ten years' initial confinement. A misdemeanor "file" was also dismissed and read in.

[4] First-degree reckless endangering safety is a Class F felony, which carries a maximum term of imprisonment of twelve years and six months. WIS. STAT. §§ 941.30(1), 939.50(3)(f). The habitual criminality penalty enhancer increased the maximum term of imprisonment by six years, *see* WIS. STAT. § 939.62(1)(c), and the dangerous weapon enhancer increased the maximum penalty by an additional five years, *see* WIS. STAT. § 939.63(1)(b).

endangerment. The court stated that the repeater allegation would "increase the incarceration period by not more than an additional six years," and "for the enhancement provision of using a dangerous weapon then the term of imprisonment can be increased by not more than five years." The court then erroneously stated, "So, the maximum you would look at then [is] nineteen years six months confinement. Do you understand the maximum penalties?" Finley confirmed he did, and the circuit court subsequently accepted Finley's plea.

¶ 7. At Finley's sentencing hearing, the State recommended a total sentence of fifteen years' imprisonment, consisting of ten years' initial confinement and five years' extended supervision. The circuit court, focusing on the need to protect the public and the nature of the offense, concluded the maximum penalty was appropriate. The circuit court thus imposed the maximum term of imprisonment authorized by law, a total of twenty-three and one-half years, consisting of eighteen and one-half years' initial confinement and five years' extended supervision.

¶ 8. Finley filed a motion for postconviction relief. He requested that he be allowed to withdraw his plea because it was not knowing, intelligent, and voluntary. Finley alleged the plea colloquy was deficient because he was not correctly informed of the maximum penalty of twenty-three and one-half years' imprisonment. Finley further alleged he was not aware the circuit court could impose a total of twenty-three and one-half years' imprisonment, citing the court's statement at the plea hearing and the typewritten plea questionnaire/waiver of rights form, both of which advised that the maximum penalty was nineteen and one-half years' imprisonment. In the alternative, Finley requested that his sentence be commuted to nineteen and one-half years'

imprisonment under *State v. Taylor*, 2013 WI 34, 347 Wis. 2d 30, 829 N.W.2d 482.

¶ 9. The circuit court denied Finley's postconviction motion without an evidentiary hearing, a determination we reversed in an unpublished, per curiam decision. *See Finley I*, ¶ 16. In that appeal, the State argued Finley had failed to demonstrate a prima facie case for plea withdrawal, citing *Taylor* for the proposition that the errors by the circuit court and on the plea questionnaire/waiver of rights form regarding the maximum penalty were "small deviations" that did not warrant relief. *Finley I*, ¶ 8 (citing *Taylor*, 347 Wis. 2d 30, ¶ 33). The State also argued Finley "could have simply computed the maximum penalty himself based on the numbers the court provided during the plea hearing." *Id.*, ¶ 10. We rejected these arguments, *id.*, ¶¶ 9, 11–13, and held as follows:

> Finley was informed by the court, and by the plea questionnaire prepared by his own attorney, that the maximum penalty he faced was nineteen and one-half years. Finley actually faced a maximum penalty of twenty-three and one-half years, which was slightly over twenty percent greater than he was told. The court later sentenced Finley to the maximum penalty [authorized by law]. Finley alleged he was not aware of the correct maximum penalty. Under these circumstances, Finley has established a *Bangert* violation as a matter of law. We therefore remand to allow the State the opportunity to prove that Finley nonetheless knew the maximum penalty he faced at the time he entered his plea.

*Finley I*, ¶ 16.[5]

---

[5] Given our resolution of Finley's prior appeal on *Bangert* grounds, we declined to address Finley's alternative argument

¶ 10. In accordance with our remand instructions, the circuit court held an evidentiary hearing at which the State was required to prove by clear and convincing evidence that, despite the *Bangert* violation, Finley's plea was, in fact, knowing, intelligent, and voluntary. The lone issue in that regard was Finley's knowledge of the range of punishments to which he was subjecting himself by entering a plea. The State called only one witness, Finley's defense counsel at the time of his plea, Jason Farris. On direct examination, Farris testified that Finley wanted to be eligible for certain prison programs, so he agreed to plead to the reckless endangerment charge as opposed to other offenses under which he would be ineligible. Farris testified he and Finley discussed this proposal the day before the plea hearing, and he recalled mentioning to Finley that "what we were proposing had a higher maximum penalty." Farris testified his usual practice would have been to cover the maximum penalty with the defendant when discussing the plea offer, and he believed Finley was aware of the correct maximum penalty at that time.

¶ 11. However, on cross-examination, Farris clarified he had no specific recollection of telling Finley the maximum penalties. When asked about why the plea questionnaire/waiver of rights form stated the maximum penalty was "19 years, 6 months confinement," Farris responded, "It was typed in [the form]. Where the math came from, I have no idea. ... I've racked my brain to try and figure out where that number came from. I have no recollection." Farris testified his usual practice was to go through a plea

that he was entitled to sentence commutation. *State v. Finley*, No. 2013AP1846–CR, unpublished slip op. ¶ 16 n.4 (WI App Mar. 18, 2014) (*Finley I*).

questionnaire line by line with the client, such that he would have read to Finley the incorrect maximum penalty identified on the form. The State did not call Finley to testify or introduce any other evidence.

¶ 12. At the close of evidence, the State argued it had met its burden of establishing that Finley knowingly, intelligently, and voluntarily entered his plea. The State resurrected its argument, rejected in Finley's prior appeal, that regardless of the circuit court's informing Finley of the incorrect maximum penalty, Finley could have calculated the correct maximum penalty himself based on the individual numbers recited at the plea hearing, because it was "basic mathematics" and "[t]he sums are not difficult." Regarding the plea questionnaire/waiver of rights form, the State acknowledged it was "unfortunate the wrong number got put down." However, the State argued that Finley could not rely on the maximum penalty identified by the circuit court and written on the plea questionnaire/waiver of rights form because Farris's usual practice was to discuss the maximum penalty with the defendant at the time of entering the plea agreement. According to the State, "that plea deal was in place and understood before [Finley] saw [the plea questionnaire/waiver of rights form], . . . and the water got muddied after that decision was made."

¶ 13. Finley's postconviction counsel countered that the only permissible inference from Farris's testimony, which was the only testimony of record, was that Finley did not know the correct maximum penalty when he entered his plea. Finley's counsel emphasized Farris's testimony that he likely read the incorrect maximum penalty to Finley when they reviewed the plea questionnaire/waiver of rights form. Finley's postconviction counsel also addressed Finley's alternative

argument for sentence commutation, asserting that what Finley really wanted was plea withdrawal.

¶ 14. The circuit court then asked whether it could deny Finley's motion for plea withdrawal if it instead "resentence[d] at this time and order[ed modification of] my existing sentence to be no more than the amount that was told to the defendant?" Finley's counsel stated it was her belief that Finley wished to withdraw his plea regardless of whether commutation was appropriate. After a brief recess to confer with Finley, his counsel clarified, on the record, that Finley sought only plea withdrawal, and counsel thus withdrew the motion to commute Finley's sentence. The State responded that if the court was going to conclude it had failed to meet its burden of proving Finley's plea was knowing, intelligent, and voluntary, the State was requesting that Finley's sentence be modified under *Taylor* to the maximum Finley thought he could receive, nineteen and one-half years' imprisonment.

¶ 15. The circuit court essentially did as the State asked. It concluded, without stating any specific factual findings, that the State met its burden of establishing Finley knew the maximum penalty he faced at the time he entered his plea. However, the court further concluded that, under WIS. STAT. § 973.13 and *Taylor*, the proper remedy in this case, "in the interest of justice," was to commute Finley's sentence "to the maximum represented to him at the time of [the plea hearing]."[6] It therefore ordered that Finley's judg-

---

[6] WISCONSIN STAT. § 973.13 provides: "In any case where the court imposes a maximum penalty in excess of that authorized by law, such excess shall be void and the sentence shall be valid only to the extent of the maximum term authorized by statute and shall stand commuted without further proceedings."

ment of conviction be amended to reflect a total sentence of nineteen and one-half years' imprisonment, consisting of fourteen and one-half years of initial confinement and five years of extended supervision.[7] Finley now appeals.

## DISCUSSION

¶ 16. "When a defendant seeks to withdraw a guilty plea after sentencing, he must prove, by clear and convincing evidence, that a refusal to allow withdrawal of the plea would result in 'manifest injustice.' " *State v. Brown*, 2006 WI 100, ¶ 18, 293 Wis. 2d 594, 716 N.W.2d 906. The law is well established that one way for a defendant to meet this burden is by demonstrating he or she did not knowingly, intelligently, and voluntarily enter the plea. *Id.* (citing cases). This failure produces a manifest injustice entitling the defendant to plea withdrawal "as a matter of right," *id.*, ¶ 19, because a plea that is not knowing, intelligent, and voluntary "violates fundamental due process," *id.* (quoting *State v. Van Camp*, 213 Wis. 2d 131, 139, 569 N.W.2d 577 (1997)). We review a determination regarding the validity of a plea using a mixed

---

[7] The circuit court's amended decision and order inaccurately stated, "At the end of the hearing, Finley's counsel stated that while Finley maintained his argument for plea withdrawal, in the alternative the Court could commute Finley's sentence to the maximum amount misstated by the Court, pursuant to [Wis. Stat. §] 973.13 and a footnote in *State v. Taylor*, 2013 WI 34, ¶ 45 [n.13], 347 Wis. 2d 30, 829 N.W.2d 482." In fact, Finley's counsel had expressly withdrawn the request that his sentence to be commuted to nineteen and one-half years, *see supra* ¶ 14; it was the State that continued to lobby for commutation as a remedy after Finley withdrew that alternative motion.

287

standard, whereby we accept the circuit court's findings of historical fact unless they are clearly erroneous, but independently determine whether those facts establish that the plea was entered knowingly, intelligently, and voluntarily. *Id.*

¶ 17. To elaborate, before accepting a plea to a given charge, the circuit court must undertake certain duties designed to ensure that a defendant's plea is knowing, intelligent, and voluntary, and therefore in compliance with due process. *See id.*, ¶ 23. These duties are set forth in Wis. Stat. § 971.08, and also have been identified repeatedly in prior cases, all of which require the circuit court to establish that the defendant understands the nature of the crime, including "the range of punishments to which he is subjecting himself by entering a plea." *Brown*, 293 Wis. 2d 594, ¶¶ 23, 35. The defendant's lack of understanding of the applicable penalties may "impair[] his ability to understand his situation fully" and, therefore, affect his decision to enter an inculpatory plea in the first instance. *See United States v. Padilla*, 23 F.3d 1220, 1222 (7th Cir. 1994). The defendant's understanding of the applicable penalties must be measured at the time of the plea, *Bangert*, 131 Wis. 2d at 269, 283, although the State may later use "any evidence" to prove the understanding existed at that time, *Taylor*, 347 Wis. 2d 30, ¶ 32.

¶ 18. Prior to *Bangert*, "a deficient plea colloquy was per se a violation of due process and required withdrawal of the defendant's plea." *Brown*, 293 Wis. 2d 594, ¶ 26. In *Bangert*, the supreme court "merely reformulate[d] the source of the [circuit court's duties] from a constitutional requirement to a statu-

tory imperative." *Bangert*, 131 Wis. 2d at 266. However, *Bangert* neither altered the mandatory requirement that circuit courts undertake a personal colloquy with the defendant prior to accepting a plea so as to ascertain that the defendant understands the nature of the charge and range of punishments, nor did it impact the constitutional requirement that a valid plea must be entered knowingly, intelligently, and voluntarily. *Brown*, 293 Wis. 2d 594, ¶¶ 29, 52.

■

¶ 19. *Bangert* also set forth the procedures applicable when there is an alleged violation of a court's statutory or other mandatory duties pertaining to the taking of a defendant's plea. First, the defendant must make a prima facie case showing that his or her plea was accepted without the circuit court's compliance with WIS. STAT. § 971.08 or other mandatory procedures. *Bangert*, 131 Wis. 2d at 274. Where the defendant has made such a showing *and* alleges that he or she did not "know or understand the information which should have been provided at the plea hearing, the burden will then shift to the state to show by clear and convincing evidence that the defendant's plea was knowingly, voluntarily, and intelligently entered, despite the inadequacy of the record at the time" the plea was accepted. *Id.*

¶ 20. Our opinion in Finley's prior appeal concluded that Finley "has established a *Bangert* violation as a matter of law," at least in the sense that he had made the requisite prima face showing that he did not know or understand certain information which should have been provided at the plea hearing. *Finley I*, ¶ 16. We concluded the circuit court had misinformed Finley of the maximum penalty applicable to the offense to which he was pleading, in violation of § 971.08(1)(a)

(2011–12). *See Finley I*, ¶¶ 6 n.2, 8–13, 16. Pursuant to *Bangert*, we concluded the circuit court's failure to ensure Finley was aware of the total maximum penalty applicable to the pleaded offense, combined with Finley's allegation that he did not actually understand the applicable maximum penalty, was sufficient to entitle Finley to an evidentiary hearing on his motion for plea withdrawal. *Finley I*, ¶ 16.

¶ 21. The purpose for the remand ordered in Finley's prior appeal was so the State could have an opportunity to show by clear and convincing evidence that Finley's plea was knowingly, intelligently, and voluntarily entered, despite the circuit court's failure to advise Finley of the applicable maximum penalty. *See id.* On remand, the State's efforts with regard to this directive were minimal; so much so that, on appeal, the State has now abandoned any argument that it met its burden, at least with respect to Finley's knowledge, at the time he pled, of the correct maximum penalty he faced.

¶ 22. As Finley observes in his brief-in-chief, the State called only one witness, Finley's defense counsel, whose testimony did not directly address Finley's state of mind at the time of the plea. Further, Farris admitted he likely read to Finley the incorrect maximum penalty identified on the plea questionnaire/waiver of rights form prior to the plea hearing, at which the circuit court also recited the wrong maximum penalty. Finley's brief-in-chief also correctly observes that although the State was permitted to do so, it "did not call Finley to testify, presented no documents to show Finley was informed of the correct maximum penalty, and did not reference any transcripts which would demonstrate that Finley understood the correct maxi-

mum penalty."[8] Under these circumstances, Finley argues, the circuit court's finding that Finley was aware of the correct maximum penalty he faced was clearly erroneous, and accordingly the circuit court's determination that Finley's plea was knowing, intelligent, and voluntary must be reversed.

¶ 23. We do not reach the merits of the issue of whether the circuit court properly found Finley was aware of the actual maximum penalty for the offense at the time he entered his plea, because the State has conspicuously abandoned any such argument supporting that finding. *See A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 491, 588 N.W.2d 285 (Ct. App. 1998) (issues raised in the trial court, but not raised on appeal, are deemed abandoned). On appeal, the State acknowledges that "[w]hen the defendant shows that he was misinformed about the maximum penalty, the [S]tate must prove the defendant's plea was nevertheless knowing, voluntary and intelligent." However, the State then argues it was not required to show that Finley knew the correct maximum penalty for the offense to which he pleaded. Rather, the State asserts, under the "manifest injustice" test, "the question is more pragmatic, i.e., whether the defendant knew that the sentence [that] was *actually imposed* on him, whether the maximum or something less, could have been imposed on him." The State understands the law to be that, when a defendant eventually receives a sentence equal to or less than the maximum sentence the defendant *thought* was applicable at the time he or

---

[8] Indeed, the prosecutor at the postconviction hearing held on remand stated she had not read all the transcripts in Finley's case, although it is unclear to which transcripts she was referring.

she entered the plea, the defendant cannot establish manifest injustice as a matter of law and is not entitled to plea withdrawal. This, the State argues, is because the State has "prove[d] that the plea was sufficiently knowing to meet the manifest injustice test." In the State's view, these principles apply because Finley's sentence was subsequently commuted to the maximum he thought applied, nineteen and one-half years' imprisonment.

¶ 24. Thus, the State does not directly respond to Finley's argument that it failed to demonstrate his knowledge, at the time of the plea, of the actual maximum penalty for the offense to which he was pleading. As a result, this appeal turns on whether the State is correct about the "more pragmatic" standard it advances. If the State is incorrect—and if, because Finley was advised of a lower maximum punishment than that established by law, the applicable case law required the State to prove that his plea was knowing, intelligent, and voluntary at the time he entered it—we have no choice but to reverse. *See Charolais Breeding Ranches, Ltd. v. FPC Secs. Corp.*, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979) (arguments not refuted are deemed conceded).

¶ 25. The State's proposed standard—which, again, pertains to the defendant's understanding of the maximum penalty in relation to the sentence *actually imposed* following a successful *Bangert* challenge—is drawn primarily from its reading of *Taylor*. In that case, the defendant, Taylor, agreed to plead no contest to the charge of uttering a forgery as a repeater. *Taylor*, 347 Wis. 2d 30, ¶ 15. At the plea hearing, the circuit court advised Taylor that the maximum penalty was "six years in prison," but it did not expressly inform Taylor that because of the repeater allegation, the

potential maximum term of imprisonment was eight years. *Id.*, ¶ 16. However, among other facts suggesting knowledge of the correct maximum penalty, the plea questionnaire/waiver of rights form Taylor completed the same day as the plea hearing, which form Taylor signed after discussing it with his counsel, noted the maximum penalty as "8 yrs prison/$10,000 fine or both." *Id.*, ¶¶ 15, 38. Taylor was sentenced to a six-year term of imprisonment, *id.*, ¶ 17, and then filed a motion for postconviction relief seeking to withdraw his plea, *id.*, ¶ 18.

¶ 26. The State in *Taylor*, invoking *Brown*, 293 Wis. 2d 594, ¶ 78, argued to the circuit court that "even if Taylor did not understand that the maximum penalty was greater than six years, [the error] would be 'harmless' because Taylor's sentence did not exceed the maximum discussed during the plea colloquy." *Taylor*, 347 Wis. 2d 30, ¶ 19. The circuit court adopted this argument and denied Taylor's postconviction motion for plea withdrawal without requiring the State to prove that Taylor's plea was entered knowingly, intelligently, and voluntarily. *Id.*, ¶ 20. We certified Taylor's subsequent appeal to the supreme court, noting that it was "unclear whether understanding the potential penalty during a plea colloquy can properly be deemed harmless error, and if so, where in the analytical framework of *Bangert* such a determination should be made." *Taylor*, 347 Wis. 2d 30, ¶ 22.

¶ 27. As we read the supreme court's decision in *Taylor*, it did not sanction the circuit court's decision, here, to commute Finley's sentence, nor does it support the State's argument on appeal that Finley is not entitled to plea withdrawal because he eventually received a sentence he thought was the maximum sentence that could be imposed. Rather, our supreme

court, following existing precedent, first evaluated whether Taylor's plea *was* knowing, intelligent, and voluntary despite the circuit court's misstatement during the plea colloquy that Taylor "faced a maximum term of imprisonment of six years when in fact he faced a maximum of eight years because of the repeater allegation." *Id.*, ¶ 28.

¶ 28. Notably, the supreme court reaffirmed the plea withdrawal procedure set forth in *Bangert*. *Taylor*, 347 Wis. 2d 30, ¶ 32. The court observed it had recently concluded in *State v. Cross*, 2010 WI 70, 326 Wis. 2d 492, 786 N.W.2d 64, that when the maximum sentence communicated to a defendant is *higher*, but not substantially higher, than that authorized by law, there has not been a *Bangert* violation and the circuit court's error, standing alone, is insufficient to show that the defendant was deprived of his or her constitutional right to due process. *Taylor*, 347 Wis. 2d 30, ¶ 33 (citing *Cross*, 326 Wis. 2d 492, ¶ 40). The court observed that such " 'small deviations' from the *Bangert* line of cases do not amount to a *Bangert* violation." *Taylor*, 347 Wis. 2d 30, ¶ 33 (quoting *Cross*, 326 Wis. 2d 492, ¶ 38). The supreme court suggested the proper remedy in these instances (where a defendant is given a sentence slightly higher than that authorized by law) is to commute the defendant's sentence under WIS. STAT. § 973.13, as opposed to plea withdrawal. *Taylor*, 347 Wis. 2d 30, ¶ 33 (citing *Cross*, 326 Wis. 2d 492, ¶ 34).[9]

---

[9] In Finley's prior appeal, the State attempted to make some semblance of a small-deviation argument, which we rejected as inadequately developed. *Finley I*, ¶ 9. In this appeal, the State, despite arguing that the circuit court appropriately commuted Finley's sentence in lieu of plea withdrawal, does not cite *State v. Cross*, 2010 WI 70, 326 Wis. 2d

¶ 29. Of greater concern, from a constitutional standpoint, than the issue found in *Cross* is the fact pattern presented in this case and, in a different manner, in *Taylor*—namely, a situation in which the defendant's understanding at the time he or she enters a plea is that the maximum sentence is *lower* than the amount actually allowed by law. *Id.*, ¶ 34 (citing *Cross*, 326 Wis. 2d 492, ¶ 39). The supreme court in *Taylor* expressly stated that, under these circumstances, a defendant's due process rights are at greater risk, and it agreed a defendant may establish a *Bangert* violation. *Taylor*, 347 Wis. 2d 30, ¶ 34 (citing *Cross*, 326 Wis. 2d 492, ¶ 39). Nonetheless, the court determined Taylor's postconviction motion was insufficient to entitle him to a *Bangert* hearing because the record was "replete with evidence that Taylor was aware of the potential eight-year term of imprisonment, comprised of a six-year term of imprisonment for the underlying charge and an additional two-year term of imprisonment from the alleged repeater." *Taylor*, 347 Wis. 2d 30, ¶ 35. Because the record demonstrated Taylor "indeed pled knowingly, intelligently, and voluntarily," the circuit court's deviation from its mandatory duties was nothing more than an "insubstantial defect." *Id.*, ¶ 39.

¶ 30. This case is not amenable to the type of resolution applied in *Taylor*. First, the circuit court in *Taylor* did not violate any mandated duty with regard

492, 786 N.W.2d 64, or provide *any* argument in support of its applicability in this case. We therefore decline to address whether *Cross* compels a different result than the one we reach, *see Industrial Risk Insurers v. American Eng'g Testing, Inc.*, 2009 WI App 62, ¶ 25, 318 Wis. 2d 148, 769 N.W.2d 82 (court of appeals will not abandon its neutrality to develop arguments on a party's behalf), other than to note *Cross* does not clearly conflict with our conclusions. *See, infra,* ¶¶ 29, 33.

to the underlying forgery offense, thereby rendering it impossible for Taylor to establish a *Bangert* violation in the first instance. The supreme court observed that under *State v. Harris*, 119 Wis. 2d 612, 350 N.W.2d 633 (1984), a repeater enhancement applies to an offense only if the court seeks to sentence the defendant to a greater amount of imprisonment than the maximum allowed for the underlying offense. *See Taylor*, 347 Wis. 2d 30, ¶ 45 n.15. The court observed that the penalty enhancement for being a habitual criminal never applied because Taylor was sentenced to only six years' imprisonment. *Id.* Thus, Taylor needed to allege his plea to the *underlying forgery* was not knowing, intelligent, and voluntary, which he could not do.[10] *Id.* Here, the circuit court did, in fact, sentence Finley, at least initially, to the maximum penalty allowed by law as a result of both the repeater and dangerous weapon enhancers. Moreover, even after "commuting" the sentence, the circuit court did not sentence Finley only to the twelve and one-half years' imprisonment maximum for the underlying offense of reckless endangerment as domestic abuse.

¶ 31. More importantly, the present case is also distinguishable from *Taylor* because the record does *not* definitively establish that Finley's plea was en-

---

[10] The supreme court only reached this discussion *after* it had determined Taylor's plea was knowing, intelligent, and voluntary. *See Taylor*, 347 Wis. 2d 30, ¶¶ 42, 45 & n.15; *see also id.* at ¶¶ 69–70 (Prosser, J., concurring) (questioning the need for a further "manifest injustice" analysis when the defendant's specific complaint was "a *Bangert* violation leading to a plea that was not knowing, intelligent, and voluntary.") For the reasons stated herein, including the State's tacit concession on this issue, we conclude Finley's plea was not knowing, intelligent, and voluntary when entered. *See supra,* ¶¶ 23–24; *infra* ¶¶ 31, 34–36.

tered knowingly, intelligently, and voluntarily. In particular, unlike in *Taylor*, the record here does not "make clear" that "the defendant knew the maximum penalty *that could be imposed." Taylor*, 347 Wis. 2d 30, ¶¶ 8, 55 (emphasis added). Indeed, in Finley's earlier appeal, we remanded the matter to the circuit court so it could hold an evidentiary hearing on that specific issue. *See Finley I*, ¶ 16. As we have mentioned, the State has both abandoned and conceded this issue by its failure to respond to Finley's argument that the State did not demonstrate by clear and convincing evidence Finley knew the maximum penalty *that could be imposed,* such that his plea was entered knowingly, intelligently, and voluntarily. *See supra* ¶¶ 23–24.

■

¶ 32. Instead, the State's argument on appeal is simply that "commutation" of a sentence that *was* lawful (insomuch as it imposed the maximum punishment actually permitted by statute) overcomes, as a constitutional matter of due process, the fact a defendant's plea was not entered knowingly, intelligently, and voluntarily on the basis that he or she misunderstood the potential maximum punishment faced upon conviction to be less than it actually was. There are at least two, related problems with the State's argument.

■

¶ 33. First, it is not altogether clear WIS. STAT. § 973.13 even applies in these circumstances. The statute speaks to courts imposing "a maximum penalty in excess of that authorized by law," and validating the length of a sentence by commuting it "only to the extent of the maximum term authorized by statute." SEC. 973.13. By statute, Finley's maximum penalty *was* that which he initially received, twenty-three and one-half years' imprisonment. His sentence was com-

muted not to "the amount authorized by law" or "the maximum term authorized by statute," but rather to an amount Finley misunderstood to be his maximum exposure based on errors surrounding his plea.[11] In any event, the footnote in *Taylor* on which the State and circuit court relied in "commuting" Finley's sentence under § 973.13, along with that portion of *Cross* on which *Taylor* relied in that footnote, do not clearly indicate § 973.13 can apply to the circumstances found in this case. *Compare Taylor*, 347 Wis. 2d 30, ¶ 45 n.13, and *Cross*, 326 Wis. 2d 492, ¶¶ 34–35 (both presuming a sentence based on "an error in the understanding of the possible maximum sentence" is a sentence "greater than that authorized by law," and thus commutable under § 973.13), *with Taylor*, 347 Wis. 2d 30, ¶ 34, and *Cross*, 326 Wis. 2d 492, ¶¶ 35, 39 (both recognizing that a *Bangert* violation may be established when the defendant is told the sentence is lower than the amount allowed by law, thereby requiring the State to prove that the plea was knowing, voluntary, and intelligent). In all, we conclude § 973.13 is inapplicable to a context such as found in this case, and the circuit court erred as a matter of law in applying it.

¶ 34. The second, and more significant problem is that the State's proposed standard relying on the

---

[11] Given certain of the State's arguments and the manner in which it cites to *Brown*, it is possible to read the State's argument on appeal as being that any error in the plea colloquy in this case became harmless once the circuit court commuted Finley's sentence to the maximum to which he thought he was exposed. To the extent the State is advancing such an argument, we note that the supreme court in *Taylor* rejected application of the harmless error doctrine under the *Bangert* framework. *Taylor*, 347 Wis. 2d 30, ¶¶ 40–41.

defendant's knowledge of the maximum sentence actually imposed (at least eventually) conflates *Taylor*'s analysis of whether the defendant's plea was entered knowingly, intelligently, and voluntarily, and *Taylor*'s analysis of whether the defendant was entitled to plea withdrawal on some other basis of manifest injustice. As *Taylor* observed, showing that a plea was not entered knowingly, intelligently, and voluntarily is but one way to prove a manifest injustice. *Taylor*, 347 Wis. 2d 30, ¶ 49. "A defendant can otherwise establish a manifest injustice by showing that there has been a 'serious flaw in the fundamental integrity of the plea.' " *Id.* (quoting *State v. Nawrocke*, 193 Wis. 2d 373, 379, 534 N.W.2d 624 (Ct. App. 1995)). Put another way, Wisconsin case law establishes that even if a plea is entered knowingly, intelligently, and voluntarily, there are other circumstances under which circuit courts may, within their discretion, still find a manifest injustice exists, thereby allowing a defendant to withdraw his or her plea. *See State v. Cain*, 2012 WI 68, ¶ 26, 342 Wis. 2d 1, 816 N.W.2d 177 (observing that a manifest injustice can arise from ineffective assistance of counsel, the defendant's failure to personally enter or ratify the plea, and the prosecutor's failure to fulfill the plea agreement, among other things).

¶ 35. The State's arguments in this case largely track those it made in *Taylor* regarding circumstances *other* than a showing that a defendant's plea was not entered knowingly, intelligently, and voluntarily, thereby entitling the defendant to plea withdrawal. Specifically, in *Taylor*, the State argued that *State v. Reppin*, 35 Wis. 2d 377, 151 N.W.2d 9 (1967), which cited the American Bar Association's examples of what constitutes manifest injustice, articulated the control-

ling test for plea withdrawal.[12] *Taylor*, 347 Wis. 2d 30, ¶ 50. The supreme court did not directly address this assertion, but implicitly rejected it, electing to adhere to the fundamental-integrity-of-the-plea test discussed in *Nawrocke*. *See Taylor*, 347 Wis. 2d 30, ¶ 52. The court concluded Taylor failed to satisfy this test, because he "received a sentence he was verbally informed he could receive." *Id.* Again, the supreme court reached this conclusion only *after* it had already determined Taylor's plea was knowing, intelligent, and voluntary. *See id.*, ¶¶ 39, 52. It is therefore telling, and quite unhelpful to the State, that nearly all of the State's citations to *Taylor* deal with that portion of the decision concerning whether there is manifest injustice in enforcing a plea agreement, post-sentence, independent of a finding that the defendant did not plead knowingly, intelligently, and voluntarily.[13]

---

[12] Actually, the State's argument in *Taylor* went further, asserting that "*State v. Reppin*, 35 Wis. 2d 377, 151 N.W.2d 9 (1967), is the *only* standard that should govern the withdrawal of Taylor's plea." *Taylor*, 347 Wis. 2d 30, ¶ 50 n.18. Our supreme court rejected this argument and reaffirmed the *Bangert* line of cases, concluding that "when a defendant seeks to withdraw his plea based on an alleged violation of Wis. Stat. § 971.08 or other court-mandated duty, the court should analyze the alleged error under *Bangert* and, if necessitated by the defendant's motion, under the manifest injustice standard." *Taylor*, 347 Wis. 2d 30, ¶ 50 n.18.

[13] In fact, the only portion of the *Taylor* opinion to which the State cites that deals with the court's analysis of whether Taylor's plea was knowing, intelligent, and voluntary is paragraph forty-two, which is the very last paragraph of that section. Yet, that paragraph reiterated, among other things, that "Taylor was aware of the additional two-year term of imprisonment he faced because the repeater allegation." *See Taylor*, 347 Wis. 2d 30, ¶ 42. This merely echoes the court's earlier conclusion that the record in that case conclusively

¶ 36. In this case, there is no need to consider whether Finley has "otherwise established" manifest injustice as a result of a serious flaw in the fundamental integrity of the plea. As we explained in *Finley I*, he has established a *Bangert* violation as a matter of law. On remand, the State was given the opportunity to show that despite the *Bangert* violation, Finley knowingly, intelligently, and voluntarily entered his plea. The State, by its abandonment of that issue on appeal, and its concession of that issue by failing to respond to Finley's appellate argument, did not satisfy its burden.

¶ 37. Therefore, because Finley's plea was not entered knowingly, intelligently, and voluntarily, we conclude his plea was entered in violation of his right to due process, which establishes a manifest injustice requiring plea withdrawal. As we read *Taylor* and other supreme court precedent, and given the parties' arguments in this appeal, such a violation is not curable, after the fact, by "commutation" of an otherwise lawful sentence down to the maximum amount of punishment the defendant was incorrectly informed he or she faced at the time of the plea. Accordingly, we reverse the judgment and order and remand to the circuit court for further proceedings with instructions that it grant Finley's postconviction motion for plea withdrawal.

*By the Court.*—Judgment and order reversed and cause remanded for further proceedings with directions.

■■■■

demonstrated Taylor, unlike Finley, understood the correct maximum sentence he was facing, including enhancers. *See id.*, ¶ 35.