REBECCA G. BRADLEY, J.
¶ 169. (dissenting). We are asked to decide whether Finley should be allowed to withdraw the plea that he entered on June 25, 2012 pursuant to a plea agreement he not only made but actively negotiated. In exchange for a plea of no contest to one count of first-degree reckless endangerment as an act of domestic abuse, while using a dangerous weapon and as a repeat offender, the State agreed to dismiss and read-in three additional domestic abuse charges: substantial battery, strangulation and suffocation, and false imprisonment. The criminal complaint and information contained the correct range of punishment: first-degree reckless endangerment carried the potential maximum penalty of up to twelve years, six months and a fine of not more than $25,000; the use of a dangerous weapon added up to an additional five years and because he was charged as a repeat offender, he could receive up to another six years. No cumulative total was listed in the complaint or information. The plea questionnaire did list the "maximum penalty" "upon conviction" as " 19 years, 6 months confinement and $25,000 fine *482 and court costs." (Emphasis added.) Adding together 12.5 + 6 + 5, the correct total maximum sentence including both confinement and extended supervision is 23.5 years.
¶ 170. At the plea hearing, the circuit court established Finley's understanding of the range of punishments at issue when it specifically referred to each crime's range by asking Finley to confirm he understood the maximum of each charge:
THE COURT: The maximum penalty for the offense would be a fine of not more than twenty-five thousand or imprisonment for not more than twelve years six months or both.
MR. FINLEY: Yes sir.
THE COURT: . . . Then because you are a repeater, then they could increase the incarceration period by not more than an additional six years. And they are basing the repeater enhancement provision on the fact that you were convicted of possession of cocaine as a subsequent offender on September 12th, 2008, in Brown County. Do you remember those felonies?
MR. FINLEY: Yes, sir.
THE COURT: Okay. And they are also charging that you used a dangerous weapon. And for the enhancement provision of using a dangerous weapon, then the term of imprisonment can be increased by not more than five years for that. Do you understand that then?
MR. FINLEY: Yeah.
¶ 171. This recitation correctly informed Finley of the maximum range of punishments for each of the crimes to which he was pleading. The circuit court, *483 however, went on to recite an incorrect confinement cumulative total by referring to the 19.5 years listed on the plea questionnaire: " So, the maximum you would look at then nineteen years six months confinement. Do you understand the maximum penalties?" Finley answered, "Yes, sir."
¶ 172. The circuit court accepted Finley's plea. Finley returned to circuit court on October 19, 2012 for sentencing. The circuit court determined based on the proper sentencing factors that Finley should be sentenced to the maximum. This time, however, the circuit court added the numbers correctly and imposed a 23.5 year sentence, consisting of 18.5 years' initial confinement followed by 5 years' extended supervision. There were no objections by Finley at sentencing to the maximum sentence of 23.5 years, even though the circuit court, after imposing the sentence, asked Finley's lawyer if there was anything the court did not consider or Finley would like addressed.
¶ 173. Finley filed a postconviction motion seeking two remedies: (1) plea withdrawal or (2) commutation of his sentence from 23.5 years to 19.5 years. The circuit court, based on its review of the portion of the plea hearing where Finley acknowledged he understood the correct individual maximum punishments, denied the motion:
I'm satisfied the defendant has not made a prima facie case that the plea was made anything but knowingly and voluntarily. I think he knew fully well. I think if you look at that transcript, I went piecemeal by piecemeal, twelve point five, five, six, I went through exactly why it was being added on. He knew his base and he knew exactly each reason why the numbers would be added on. They are consistent with the information placed in the information.
*484 Now, in essence what he wants to claim is, oh, in that case it should get me out of this plea. I think where the information is provided clearly orally, and I think I'm required to provide the length of the sentence orally. ...
So, I orally have him sitting in that chair exactly right there. We are this distance apart, and I went over the base penalty and the reason why he was receiving each of the enhancements and what the enhancement was. Now, clearly he hasn't made a prima facie case to this Court that he didn't make that plea knowingly and voluntarily.
The circuit court also denied Finley's request to commute the sentence.
¶ 174. Finley appealed the circuit court's decision to the court of appeals, which held Finley made a prima facie case because the two references to the 19.5 years of confinement constituted a Bangert deficiency.[1] It remanded the case to the circuit court for an eviden-tiary hearing to give the State the chance to prove despite the Bangert violation, Finley entered his plea knowingly, intelligently, and voluntarily. See State v. Finley, No. 2013AP1846-CR, unpublished slip op., ¶ 16 (Wis. Ct. App. Mar. 18, 2014) (per curiam). This step is required to ensure a defendant does not "game the system by taking advantage of judicial mistakes." See State v. Brown, 2006 WI 100, ¶ 37, 293 Wis. 2d 594, 716 N.W.2d 906.
¶ 175. Upon remand, the circuit court held the hearing as directed. The State called Finley's trial counsel to testify. He testified:
*485 • A number of plea proposals went back and forth and he remembers meeting with Finley in the county jail the day before the plea hearing.
• Finley did not like the plea proposal from the State because he wanted to be eligible for the Challenge Incarceration or Earned Release Programs. Finley made a counter proposal to plead to a charge that would make him statutorily eligible even though Finley's proposal carried higher maximum penalties than what the State had proposed.
• He specifically remembers discussing with Finley the day before the hearing that Finley's proposal carried a higher maximum penalty and he would not have a client plead unless the client was aware of the maximum exposure.
The prosecutor questioned Finley's trial lawyer further on this:
Q So, that would have been something you would have covered with him so he knew, okay, you may become eligible, but now you are looking at this specific exposure; is that correct?
A Yes.
Q And on that date is there any reason to believe that you didn't give him the correct maximum exposure?
A No.
Q You did not do the plea form on that date; is that correct?
A No. Because we didn't have any chance on a Sunday evening to discuss the matter with [the prosecutor].
*486 Q So, to the best of your knowledge, the day before when he was willing to plead to this charge with these enhancers, he was fully aware of the maximum potential penalties?
A Yes.
Q At the plea hearing at the time the [circuit court], utilizing the document that was incorrect, indicated the potential maximum sentence, did the defendant turn to you and say, wow, that's lower than what you told me?
A He said something to me. I don't recall what.
Q But the evening before he had already been told the correct amount, that would have been your practice?
A That would have been my practice.
Q And you, of course, were present in the courtroom when the Judge detailed the correct maximum penalties separately which were just hearing the numbers; is that correct?
A Yes.
Q So, as you entered into the plea hearing, would it be your opinion at this point in time that the defendant was fully apprised of the maximum — correct maximum exposure?
A That would be my practice, yes.
f 176. Cross-examination of Finley's attorney, as material, provided:
Q [Counsel], do you have a specific recollection of telling Mr. Finley the maximum penalties in this case?
*487 A Not a specific recollection, no.
Q Now, I would draw your attention to the understandings where it says, "The maximum penalty I face upon conviction is nineteen years six months confinement and $25,000 fine and court costs." That's typewritten, correct?
A The nineteen — yes.
Q It was typed in. Where the math came from, I have no idea.
Q I just mean —
A I've racked my brain to try and figure out where that number came from. I have no recollection.
¶ 177. Finley's lawyer continued that he believed someone from his office typed that information on the form as well as the information regarding the plea agreement:
Plea to count one as charged. State will dismiss and read in the remaining charges in 2011 CF 671 as well as the charges in 2011 CM 953. The State will cap its recommendation at ten years initial confinement. We are free to argue.
¶ 178. Finley's lawyer clarified that the State's cap was on confinement not the entire sentence, and then answered a series of questions about the last-minute plea negotiations, and whether he recalls when and where he went over the plea questionnaire form with Finley. Finley's lawyer did not remember the exact time or location. The cross-examination concluded with two questions and answers, which the court of appeals used in its decision:
*488 Q Would it be your practice when meeting with your client to go through the plea questionnaire line by line?
A Yes.
Q And when you got to the understandings, would it be your practice to read off for him the "nineteen years six months confinement"?
A Yes.
¶ 179. Re-direct examination provided:
Q But the plea form itself was not utilized when you met with him for this lengthy meeting the day before the plea hearing; is that correct?
A No. It wouldn't have been prepared by then for the reason we didn't have the discussion with the [prosecutor].
Q So, the erroneous amount of nineteen and a half, that was first introduced after the defendant had already proposed this offer to the State on the day of the plea hearing?
A Yes.
¶ 180. In arguments, the State argued it had met its burden to prove Finley knowingly, intelligently, and voluntarily entered into the plea:
The plea offer was from the defendant. It took place as negotiations were considered. It sounds like they were consider [ed], meeting took place where many factors had to be considered and really with the idea that you were trading the possibility of being eligible for a program and risking further exposure. Any defense attorney would make sure that the client was clear on that point.
*489 [Finley's lawyer] has been in these courts many many times, many many years. His usual practice would be, well, if you are willing to plead to this, you certainly need to know what the maximum is. There is no suggestion that he was given the wrong maximum on the date that he met with him to discuss what should they offer to [the prosecutor]. That's not at all in evidence.
The sums are not difficult. There was not sixteen counts that one has to figure it all out. It was basic mathematics and presented, the record would indicate, based on his normal practice, correctly to the defendant. At the time the defendant said, yes, go offer this. This is what I plead to. So, at that point the State has established that he understood the máximums, the correct máximums, as he indicated he would plead to the charge as it was and see if [the prosecutor] would take that.
It's unfortunate the wrong number got put down. [Finley's trial lawyer] doesn't remember the defendant at any point in time — I don't see any record such as when the presentence was done where people were saying, well, wait a minute, we were expecting it to be much lower. The máximums are usually outlined in the presentence report.
I don't remember and I haven't seen all the transcripts, but was there any exclamations when the sentence was given out, judge, you can't do that. We all thought it was going to be the nineteen because nobody relied on that. It was an erroneous number that was just unfortunately set there. The defendant already knew the accurate penalty at the time he offered to make the plea.
¶ 181. Finley's postconviction lawyer then argued the State failed to prove Finley knew the correct maximum sentence and asked the court to consider *490 commuting Finley's sentence under State v. Taylor, 2013 WI 34, 347 Wis. 2d 30, 829 N.W.2d 482:
Now, I did want to also mention, Your Honor, the other issue that's been in this litigation that no court has ruled on yet, and that is that if this Court concludes that Mr. Finley — I'm sorry. It's a separate type of relief based on Taylor. And that is that the Court was bound by the number that was given to Mr. Finley on the plea questionnaire and out loud in court, that being nineteen and a half years.
The claim is based on a footnote in this Taylor decision. It's suggested that — well, the problem in Taylor was a different one than the one here. The Court seemed to suggest in this footnote that if the defendant is told a number, that's the most he can get. It's a little unclear to me what the Supreme Court meant when they said that.
It's — let's see if I can find it — actually it's paragraph 40,1 believe, of the decision. And what they seem to be saying is that if the defendant —just to use a hypothetical, let's say the real maximum penalty is twenty years and the defendant is told the maximum is fifteen years and gets fourteen years, that there would be no problem with that because he got less than he was told. By suggestion they are saying that if he gets more than what he was told, the sentence must be commuted to what he was informed. I have not seen any cases since Taylor that deal with that issue, but I think that it is one that's suggested by the decision.
So, if the — however, the Court rules on our motion to withdraw his plea, and that is what Mr. Finley wants, wishes to withdraw his plea, that there is also this other issue that the sentence should be commuted to a total of nineteen and a half years bifurcated between both initial confinement and extended supervision.
*491 ¶ 182. At this point, the circuit court asked if it would have to deny Finley's motion to withdraw his plea in order to reduce his sentence to the amount he was told at the plea hearing. Finley's postconviction lawyer asked for a short recess to speak with Finley. After the recess, Finley's lawyer withdrew "the second claim based on Taylor" and explained "Mr. Finley is maintaining that he would like to withdraw his plea and so that is the only claim that we are making." The circuit court asked the State its position on this, and the State advised that "if the Court is going to rule that we haven't met our burden," "[b]ased on the Taylor case, we would ask [the sentence] be modified as such."
¶ 183. The circuit court then denied the motion to withdraw the plea and ordered Finley's sentence modified to 19.5 years, consisting of 14.5 years of initial confinement followed by 5 years of extended supervision. There were no objections and Finley's lawyer offered to prepare an order.
f 184. The written order following this hearing contained the following:
• "The Court now finds that the State met its burden of establishing that Finley knew the maximum penalty he faced at the time he entered his plea. However, the Court also believes that it is in the interest of justice to commute Finley's sentence to the maximum represented to him by the Court at the time of sentencing."
• "While the Court is satisfied based on the testimony of [Finley's trial lawyer] that Finley actually knew the correct penalty at the time he offered to enter a plea, the Court erred when it told Finley that 19.5 years was the maximum penalty possible and then imposed a sentence in *492 excess of that amount. Therefore, the Court believes that it is in the interest of justice to commute Finley's sentence to the maximum represented to him at the time of sentencing."
¶ 185. Finley appealed a second time to the court of appeals, which reversed the circuit court's determination that the State proved Finley knew the correct maximum and that he entered a knowing, intelligent, and voluntary plea. See State v. Finley, 2015 WI App 79, 365 Wis. 2d 275, 872 N.W.2d 344. Its reversal was based on two things: (1) it suggested the circuit court's finding that Finley was aware of the correct maximum penalty was clearly erroneous; and (2) the State's appellate argument focused on its request for a new remedy in plea withdrawal cases where the error relates only to the correct maximum penalty— commutation of the sentence to the amount the defendant was told. Id., ¶¶ 2 — 3, 22-23, 32. The court of appeals reversed the circuit court and ordered plea withdrawal.
¶ 186. We accepted the State's petition for review and heard oral argument in this case on April 7, 2016. At oral argument, the assistant attorney general (AAG) representing the State did not remember that the circuit court found that Finley entered his plea knowingly, intelligently, and voluntarily or that the circuit court found Finley knew the correct maximum at the plea hearing. The AAG was not interested in discussing that issue, but instead argued for an alternative remedy under the circumstances here — that of sentence commutation rather than plea withdrawal.
¶ 187. I would reverse the court of appeals' decision ordering plea withdrawal. My position is based on: (1) the circuit court finding that the State proved Finley knew the correct maximum sentence at the time *493 of the plea hearing through the testimony of his trial lawyer; and (2) this court's duty to apply the pertinent law to the facts of record in this case even when a party's attorney is not well-versed in the record and not interested in discussing the dispositive issue.
I. APPLICABLE LAW
¶ 188. A defendant seeking to withdraw a plea after sentencing must prove by clear and convincing evidence that withdrawal is required to prevent a manifest injustice. See Brown, 293 Wis. 2d 594, ¶ 18. Plea withdrawal is within the discretion of the circuit court. See State v. Garcia, 192 Wis. 2d 845, 860, 532 N.W.2d 111 (1995). The manifest injustice test is satisfied if a plea was not knowingly, intelligently, and voluntarily entered. Brown, 293 Wis. 2d 594, ¶ 18. This presents an issue of constitutional fact. Id., ¶ 19. "We accept the circuit court's findings of historical and evidentiary facts unless they are clearly erroneous but we determine independently whether those facts demonstrate that the defendant's plea was knowing, intelligent, and voluntary." Id.
¶ 189. Wisconsin Stat. § 971.08 and State v. Bangert, 131 Wis. 2d 246, 260-62, 389 N.W.2d 12 (1986), establish duties to ensure a defendant enters a knowing, intelligent, and voluntary plea. Brown, 293 Wis. 2d 594, ¶ 23. Wisconsin Stat. § 971.08 provides:
(1) Before the court accepts a plea of guilty or no contest, it shall do all of the following:
(a) Address the defendant personally and determine that the plea is made voluntarily with understanding of the nature of the charge and the potential punishment if convicted.
*494 (b) Make such inquiry as satisfies it that the defendant in fact committed the crime charged.
(c) Address the defendant personally and advise the defendant as follows: "If you are not a citizen of the United States of America, you are advised that a plea of guilty or no contest for the offense with which you are charged may result in deportation, the exclusion from admission to this country or the denial of naturalization, under federal law."
(d) Inquire of the district attorney whether he or she has complied with s. 971.095 (2).
When a defendant files a motion to withdraw a plea, after sentencing, based on an allegedly deficient plea colloquy, the motion is reviewed to determine whether the defendant has established a prima facie violation of Wis. Stat. § 971.08 or Bangert, and whether the defendant has alleged he or she "did not know or understand the information that should have been provided at the plea hearing." Brown, 293 Wis. 2d 594, ¶ 39. If the defendant meets both burdens, "the court must hold a postconviction evidentiary hearing at which the state is given an opportunity to show by clear and convincing evidence that the defendant's plea was knowing, intelligent, and voluntary despite the identified inadequacy of the plea colloquy." Id., ¶ 40. If the State meets its burden, the circuit court denies the defendant's motion for plea withdrawal. Id., ¶ 41. If the State does not meet its burden, the circuit court grants the defendant's motion for plea withdrawal unless the circumstances fall under Wis. Stat. § 973.13, State v. Cross, 2010 WI 70, 326 Wis. 2d 492, 786 N.W.2d 64, or Taylor, in which case the sentence may stand or be modified. Wisconsin Stat. § 973.13 provides:
*495 Excessive sentence, errors cured. In any case where the court imposes a maximum penalty in excess of that authorized by law, such excess shall be void and the sentence shall be valid only to the extent of the maximum term authorized by statute and shall stand commuted without further proceedings.
¶ 190. Cross involved a defendant who was incorrectly told the maximum penalty was 40 years total with a maximum of 25 years' initial confinement. Cross, 326 Wis. 2d 492, ¶ 1. The correct maximum was 30 years total with a maximum of 20 years' initial confinement. The circuit court sentenced Cross to 40 years, but after Cross's postconviction motion for plea withdrawal pointed out the error, the circuit court modified the sentence to 30 years with 20 years of initial confinement. Id., ¶ 2. We held that despite the incorrect information, Cross's plea was knowing, voluntary, and intelligent and there was no Wis. Stat. § 971.08 or Bangert violation. We also upheld the modified sentence because no manifest injustice occurred. Cross, 326 Wis. 2d 492, ¶¶ 3-5. We did observe in Cross that when the misinformation on the maximum sentence is "significant, or when the defendant is told the sentence is lower than the amount allowed by law, a defendant's due process rights are at greater risk and a Bangert violation may be established" and if that is the case, the burden shifts to "the State to prove at an evidentiary hearing that the plea was knowing, voluntary, and intelligent." Cross, 326 Wis. 2d 492, ¶ 39.
¶ 191. Taylor involved a defendant who faced a maximum penalty of six years on the underlying charge, plus two additional years for a repeater enhancer. Taylor, 347 Wis. 2d 30, ¶ 1. At the plea hearing, the circuit court told Taylor the maximum penalty *496 was six years and referred to the repeater enhancer, but did not specifically explain it added an additional two years. Id,., ¶ 2. Nonetheless, we concluded that the plea in Taylor was knowing, voluntary, and intelligent because the circuit court informed Taylor of the repeater enhancer at the plea hearing, Taylor understood he was charged with the repeater enhancer, the record demonstrated that Taylor knew the repeater enhancer could tack on an additional two years, and ultimately he was only sentenced to six years. Id., ¶ 42.
II. ANALYSIS
A. Circuit Court's Finding
f 192. The circuit court, after conducting the evidentiary hearing, specifically found that the State proved Finley knew the correct maximum penalty and entered his plea knowingly, intelligently, and voluntarily. In addition, the circuit court modified Finley's sentence to a term of 19.5 years. This, in my opinion, should end the matter and result in reversal of the court of appeals and a denial of Finley's request to withdraw his plea.
¶ 193. The circuit court's finding is not clearly erroneous as the direct testimony of Finley's lawyer supports it. Finley's lawyer testified that Finley proposed the plea he took and that Finley knew the maximum penalty associated with that proposal. Finley's lawyer testified about how Finley's proposal carried a longer sentence than the one proposed by the State but Finley chose the lengthier sentence with the hope of being eligible for Challenge Incarceration and other programs. The testimony elicited on cross- *497 examination, although inconsistent with the direct testimony, does not operate to erase the direct testimony or the circuit court's reliance on it. The circuit court saw and heard Finley's lawyer testify live. It observed the demeanor, facial expressions, tone, and inflection of Finley's lawyer. It assessed whether Finley's lawyer's answers were an emphatic or reluctant "yes" as to whether Finley knew the correct maximum. The circuit court, as the factfinder here, is in a better position to assess credibility and resolve any inconsistencies in the testimony. This is why appellate courts defer to the factfinder on witness credibility. See Gauthier v. State, 28 Wis. 2d 412, 415, 137 N.W.2d 101 (1965). An appellate court should not substitute its judgment unless the circuit court relied on "inherently or patently incredible" evidence. Id. at 416. As an appellate court, we review a black and white transcript of words. This puts us at a disadvantage in assessing credibility and resolving inconsistencies. Id. Here, the circuit court found Finley's lawyer's direct testimony credible to show Finley knew the correct maximum despite the double reference to "19.5 years confinement." Finley's lawyer explained why: it was Finley's proposal, they had a lengthy discussion about it, it was his normal practice, and he specifically remembers discussing the penalties with Finley. Further, the record shows no objection, discussion, or confusion when the sentencing court imposed 23.5 years instead of 19.5. The reasonable inference from the record suggests that both Finley and his lawyer knew 23.5 was the correct amount.[2]
*498 B. Our Duty to Follow the Law
¶ 194. The law is clear in this case. The circuit court found the State met its burden of proving Finley knew the correct maximum and entered his plea knowingly, intelligently, and voluntarily. That finding is not clearly erroneous. It was based on the testimony of Finley's trial lawyer who negotiated the plea and would certainly be the one to know if Finley had the correct penalty information at the time of his plea. Thus, under Bangert and Brown, that ends the matter. Finley is not entitled to withdraw his plea. How the AAG handled or argued this case on appeal does not alter the law. Although we are entitled to accept concessions by a party, we are not required to do so. See State v. St. Martin, 2011 WI 44, ¶ 13 n.6, 334 Wis. 2d 290, 800 N.W.2d 858 (we are "not bound by the parties' interpretation of the law or obligated to accept a party's concession [on the] law") (citation and one set of quotation marks omitted). Justice should not depend on how adeptly or ineptly a party's arguments are *499 presented. It should depend on what the law is. Here, the law says a defendant may only withdraw a plea after sentencing if the defendant establishes a manifest injustice. A manifest injustice occurs when a plea is not entered knowingly, voluntarily, and intelligently. The circuit court, which is charged with deciding whether the State proved that Finley's plea was so entered, heard the testimony and argument and reached a reasonable determination based on the facts and law. It held that Finley did know the correct range of punishment because he discussed it with his trial lawyer the night before the plea hearing and the range of punishment for the plea agreement Finley wanted was greater than that being proposed by the State. The majority casts aside the circuit court's ruling as if it does not exist because the State meandered down a different path on appeal. I will not do so.[3]
¶ 195. Accordingly, I respectfully dissent.

 See State v. Bangert, 131 Wis. 2d 246, 260-62, 389 N.W.2d 12 (1986).

 Although my position does not require an analysis of State v. Cross, 2010 WI 70, 326 Wis. 2d 492, 786 N.W.2d 64, or State v. Taylor, 2013 WI 34, 347 Wis. 2d 30, 829 N.W.2d 482, or *498 the fact the incorrect 19.5 referred only to confinement rather than the full sentence, I address them briefly. The plea questionnaire and the reference to it at the plea hearing note that the maximum penalty Finley faced was 19.5 years of confinement. While this amount was wrong, it was only off by one year, not four, because it referred to confinement time, not total length of sentence. Finley's total length of sentence was 23.5 years, which consisted of a maximum of 18.5 years of confinement and 5 years of extended supervision. Moreover, the correct individual amounts were accurately described and acknowledged by Finley. Like the defendants in Cross and Taylor, Finley knew the amount he faced and entered a knowing, intelligent, and voluntary plea. Under such circumstances, Finley's due process rights were not violated and no manifest injustice occurred; consequently, the circuit court did not erroneously exercise its discretion when it denied Finley's plea withdrawal motion.

 It also appears to me that Finley played fast and loose with the system, which is something this court frowns upon. See State v. Petty, 201 Wis. 2d 337, 346-47, 548 N.W.2d 817 (1996). Finley argued in his postconviction motion, on his first appeal and through most of the evidentiary hearing that he wanted sentence modification under Taylor. When it appeared the circuit court was leaning toward that remedy, Finley reversed course and insisted solely on a remedy of plea withdrawal. Although this scenario does not fit precisely into judicial estoppel, it definitely smells like an intentional manipulation of the judicial system. See Petty, 201 Wis. 2d at 346-47.