SHIRLEY S. ABRAHAMSON, J.
¶ 1. This is a review of a published decision of the court of appeals, State v. Finley, 2015 WI App 79, 365 Wis. 2d 275, 872 N.W.2d 344. The court of appeals reversed a judgment and order of the Circuit Court for Brown County, William M. Atkinson, Judge, and remanded the cause to the circuit court with directions to permit the defendant, Timothy L. Finley, Jr., to withdraw his plea of no contest to first-degree recklessly endangering safety as domestic abuse.
¶ 2. The court of appeals ordered the remedy of plea withdrawal, relying on the remedy set forth in State v. Bangert, 131 Wis. 2d 246, 389 N.W.2d 12 (1986), for cases in which a circuit court fails to comply with Wis. Stat. § 971.08(1) (2011-12) or other mandatory duties at a plea colloquy and the defendant does not knowingly, intelligently, and voluntarily enter his or her plea.[1]
¶ 3. Wisconsin Stat. § 971.08(l)(a) provides that before the circuit court accepts a plea of guilty or no contest, it shall, among other things, "address the defendant personally and determine that the plea is made voluntarily with understanding of the nature of the charge and the potential punishment if convicted." Wis. Stat. § 971.08(l)(a) (emphasis added).[2]
*406 ¶ 4. This case involves felonies. Throughout this opinion, we use the statutory phrase "potential punishment" to describe the felony sentencing information a circuit court is required to impart to a defendant under the statute and case law. The phrase "potential punishment" has not been defined in the statutes or the case law. In analyzing whether a defendant was correctly advised of the potential punishment, our cases have looked to the maximum statutory penalty, that is, the maximum sentence provided for by statute. Some cases use the phrase "range of punishments" in addition to or in lieu of the statutory phrase "potential punishment." "Range of punishments," "potential punishment," and "maximum statutory penalty" are used synonymously in the cases.[3] *407 The case law also uses other phrases to mean "potential punishment."[4]
¶ 5. Wisconsin Stat. § 939.50(3) sets forth the maximum statutory penalty for felonies.[5] Other statutes add enhancements to the penalties specified in *408 Wis. Stat. § 939.50(3). For example, there are enhancements for repeat offenses, domestic abuse offenses, and offenses committed with the use of a dangerous weapon. See, e.g., Wis. Stat. §§ 939.62, 939.621, 939.63.
f 6. This opinion uses the phrase "maximum statutory penalty" interchangeably with the statutory phrase "potential punishment." We do so because, as already explained, our cases refer to the "maximum statutory penalty" (or similar phrase) in describing potential punishment. Furthermore, the issue in the instant case is the remedy when the circuit court misstates the potential punishment by telling the defendant an incorrect maximum statutory penalty for his offense.
f 7. Before we continue, we note that circuit courts, the court of appeals, and this court have not used consistent terminology in discussing the duty of circuit courts to advise a defendant of the potential punishment before accepting a plea. We have therefore appended a glossary of terms to assist the reader and the courts in using and understanding the correct terminology. Throughout our opinion, terms that are included in the glossary are identified by an asterisk to call attention to their meaning, a meaning that may not be obvious to the reader.[6] The glossary includes references to statutes and case law that should be consulted for further and more precise information.
¶ 8. The "potential punishment," that is, the maximum statutory penalty Finley faced in entering his plea, is 23 years, 6 months' imprisonment.* The circuit court advised Finley during the plea colloquy *409 accepting Finley's no contest plea that the potential punishment was confinement* in prison for 19 years, 6 months rather than imprisonment* for 23 years, 6 months. Nowhere in the circuit court record was this misinformation corrected. Thus, the circuit court misstated the potential punishment if Finley were convicted.
¶ 9. The issue presented in the instant case does not focus on whether the circuit court erred during the plea colloquy by misstating the potential punishment. The State concedes that the circuit court erred.[7] Instead, the focus in the instant case is on the remedy for the circuit court's misstatement of the potential punishment if convicted, when Finley lacked knowledge of the potential punishment. Thus, we are reviewing the plea colloquy in the instant case in a unique posture — we are asked to decide what remedy should be provided in the circumstances of the instant case.
¶ 10. The State's petition for review and the parties' briefs state the issue of the remedy as follows: When a defendant who pleads guilty or no contest is misinformed that the maximum statutory penalty is lower than the maximum actually allowed *410 by law, and the sentence imposed is more than the defendant was told he could get, can the defect be remedied by reducing the sentence to the maximum the defendant was informed and believed he could receive instead of letting the defendant withdraw his plea?[8]
¶ 11. This court has advised circuit courts of the importance of discharging the statutorily and judicially mandated requisites of the plea colloquy: "The faithful discharge of these duties is the best way we know for courts to demonstrate the critical importance of pleas in our system of justice and to avoid constitutional problems."[9]
¶ 12. A violation of Wis. Stat. § 971.08(l)(a) may have constitutional ramifications.[10] A defendant's understanding of the potential punishment if convicted is relevant for determining whether the plea was know *411 ingly, intentionally, and voluntarily entered.[11] "The United States Constitution sets forth the standard that a guilty or no contest plea must be affirmatively shown to be knowing, intelligent, and voluntary."[12]
¶ 13. The court has declared that "[w]hen a guilty plea is not knowing, intelligent, and voluntary, a defendant is entitled to withdraw the plea as a matter of right because such a plea 'violates fundamental due process.' "[13]
¶ 14. The State argues that Finley entered his plea knowingly, intelligently, and voluntarily in the constitutional sense because his sentence was ultimately reduced (commuted)[14] to the maximum penalty of which he was advised. The State is proposing a novel interpretation of the due process requirement that a plea be entered knowingly, intelligently, and voluntarily, without support in the United States Supreme Court's case law.
*412 ¶ 15. The following exchange at oral argument is instructive regarding the State's position in the instant case and the focus of the parties and this court on the remedy for the circuit court's misstatement to Finley:
State: And I want — and as long as you're bringing that up, I made this absolutely clear in my petition for review, I made this absolutely clear in my brief,. . . we are not contesting Finley's assertion that his plea was not. . . entered with an understanding of the correct maximum penalty.
Justice Ziegler: That's the question, why are you conceding that? .... Counsel that's really the question that's behind these questions, if I'm reading my colleagues correctly .... I'm just asking why you're conceding that. That's really what's behind their questions I think. Why are you making that concession?
State: Because the evidence — and I want to make clear what we are conceding, that's my whole point — I am not.. . conceding that this plea was not knowingly entered, I am absolutely not conceding that. That's my entire argument, that it was knowingly entered. What I am conceding is that the defendant did not know the correct maximum penalty when he pleaded guilty.
Justice Ziegler: Well, how can you knowingly, intelligently, and voluntarily plead if you don't know the penalty to which you plead?
State: You can do it if you know the penalty that you actually get, and that is the whole point of my argument. If you are told that you can get a certain penalty .. . and understand that you *413 can get that penalty when you plead guilty, and you in fact wind up getting that penalty that you know you could get when you plead guilty, your plea is in fact knowing in the constitutional sense. Now there's an error, no question about that, and we're conceding this, there is an error, he was misadvised of the correct maximum penalty, but that error was harmless. It was harmless because he did not get the actual maximum.
¶ 16. In addressing the remedy for the circuit court's misstating the potential punishment Finley faced if convicted, Finley relies on Bangert, " a timeless primer on the foundation principles of the plea colloquy,"[15] and State v. Brown, 2006 WI 100, ¶¶ 22, 34, 293 Wis. 2d 594, 716 N.W.2d 906, which "reexamine[d] the legal tenets fundamental to guilty pleas" and "restate[d] and supplement[ed] the Bangert outline."
¶ 17. Bangert and Brown are the seminal cases analyzing the requirements for plea colloquies set forth in Wis. Stat. § 971.08(1) and the case law, as well as the remedy when a defendant entered his plea not knowing the information (here the potential punishment) that circuit courts are required to impart to a defendant.
¶ 18. Finley argues that under Bangert and Brown his failure to know the potential punishment if convicted (after the State was given the opportunity to prove at an evidentiary hearing what he knew) entitles him to withdraw his plea.[16]
*414 ¶ 19. In contrast, relying on State v. Cross, 2010 WI 70, 326 Wis. 2d 492, 786 N.W.2d 64, and State v. Taylor, 2013 WI 34, 347 Wis. 2d 30, 829 N.W.2d 482, the State contends that plea withdrawal is not the sole remedy when a defendant is misinformed about the potential punishment he faces and alleges that he did not know the potential punishment when he entered his plea. The State argues that the proper remedy in the instant case and others like it is reduction (commutation) of the sentence to the potential punishment the defendant was told he could receive.[17] In the *415 instant case, the State argues the circuit court correctly reduced Finley's sentence from the maximum statutory penalty, 23 years, 6 months' imprisonment,* to 19 years, 6 months' imprisonment* (even though during the plea colloquy the circuit court advised Finley that he was subject to 19 years, 6 months' confinement in prison*).
¶ 20. Upon consideration of Bangert, Brown, Cross, and Taylor, for the reasons set forth we conclude that under the circumstances of the present case, Bangert and Brown govern. Finley is entitled to withdraw his plea.[18]
¶ 21. Accordingly, we affirm the decision of the court of appeals and remand the cause to the circuit court, as did the court of appeals, with instructions to grant Finley's motion to withdraw his plea.
rH
¶ 22. The facts and lengthy procedural history are not in dispute for purposes of this review. Since *416 sentencing, the instant case has been before the circuit court twice and the court of appeals twice. The circuit court held two postconviction hearings — one non-evidentiary and the other evidentiary — and the court of appeals has twice reversed the circuit court's denials of Finley's motion for withdrawal of his plea.
¶ 23. We discuss the proceedings before the circuit court and the court of appeals because these proceedings are relevant to our resolution of the instant case.
f 24. We begin with the criminal complaint. Finley was charged with four counts stemming from an assault of his girlfriend: (1) first-degree reckless endangerment with use of a dangerous weapon; (2) substantial battery; (3) strangulation and suffocation; and (4) false imprisonment.[19] The four counts were charged as acts of domestic abuse.
¶ 25. Pursuant to a plea agreement, Finley agreed to plead no contest to the first count, first-degree reckless endangerment as domestic abuse with enhancers for habitual criminality and use of a dangerous weapon. In exchange, the State agreed that the *417 remaining charges would be dismissed and read in, and that the State would cap its sentencing recommendation at ten years' initial confinement.*
¶ 26. The maximum statutory penalty of imprisonment* (with applicable enhancers) Finley faced if convicted was 23 years, 6 months.
¶ 27. On at least two occasions in the circuit court proceedings, however, Finley was misinformed that he faced potential punishment of 19 years, 6 months' confinement.* The plea questionnaire/waiver of rights form stated (with emphasis added) that Finley faced "19 years, 6 months confinement ...."* The circuit court's misstatement of the potential punishment referred to both "confinement"* and "imprisonment,"* which have different meanings.
¶ 28. First, the plea questionnaire/waiver of rights form completed by the Finley's attorney and signed by Finley incorrectly stated the potential punishment was "19 years, 6 months confinement."*
¶ 29. Second, before accepting Finley's no contest plea, the circuit court engaged in a colloquy with Finley regarding the potential punishment he faced if convicted. The colloquy (repeated here with emphasis added) advised Finley of each of the component parts of the potential punishment Finley faced if convicted and referred (without explaining the use of the terms) to two different concepts — imprisonment* and confinement* — as follows:[20]
*418 Court: The maximum penalty for the offense would be a fine of not more than $25,000 or imprisonment* not more than twelve years and six months or both.
Finley: Yes, sir.
Court: Okay. I take it — are we pleading as a repeater?
State: Yes, Your Honor.
Court: Okay. That will be the base penalty. Then because you are a repeater, then they could increase the incarceration period[21] by not more than an additional six years. And they are basing the repeater enhancement provision on the fact that you were convicted of possession of cocaine as a subsequent offender, and possession of THC as a subsequent offender on September 12th, 2008, in Brown County. Do you remember those felonies?
Finley: Yes, sir.
Court: Okay. And they are also charging that you used a dangerous weapon. And for the enhancement provision of using a dangerous weapon then the term of imprisonment * can be increased by not more than five years for that. Do you understand that then?
Finley: Yeah.
¶ 30. Immediately following this piecemeal recitation of the component parts of the potential punishment, the circuit court incorrectly totaled the compo *419 nent parts of the potential punishment (with emphasis added) informing the defendant of only the term of confinement:*
Court: All right. So, the maximum you would look at then [is] nineteen years six months confinement* Do you understand the maximum penalties?
Finley: Yes, sir.
¶ 31. Adding these penalties and enhancements together — the 12 year, 6 month base penalty, the 6 year repeater enhancement, and the 5 year dangerous weapon enhancement — yields the maximum statutory penalty if convicted of 23 years, 6 months' imprisonment.*
¶ 32. Neither the circuit court, the prosecuting attorney, defense counsel, nor Finley corrected the circuit court's misstatement of Finley's potential punishment if convicted.
¶ 33. Subsequently, at the sentencing hearing, the circuit court imposed the maximum statutory penalty of 23 years, 6 months' imprisonment* (divided between 18 years, 6 months' initial confinement* and five years' extended supervision*).
| 34. After sentencing, Finley moved to withdraw his plea, arguing that he was misinformed, when he entered his plea, of the potential punishment he faced if convicted and that he did not know the potential punishment.[22] As a result, Finley sought plea withdrawal on the grounds that his plea was not *420 entered knowingly, intelligently, and voluntarily. In the alternative, Finley requested reduction (commutation) of his sentence to the maximum sentence he was told he could receive, 19 years and 6 months.
¶ 35. The circuit court held a non-evidentiary hearing on Finley's motion. The State argued that Finley had not stated a prima facie violation of the statutory or judicially mandated plea hearing procedure, that is, the State argued that no Bangert violation occurred.
f 36. Finley argued that he had stated a prima facie Bangert violation: The transcript of the plea colloquy demonstrated that the circuit court misinformed him of the maximum statutory penalty and that defense counsel misinformed him of the maximum statutory penalty in the plea questionnaire/waiver of rights form. Finley alleged that he was unaware of the potential punishment he faced if convicted.
¶ 37. The circuit court denied Finley's motion to withdraw his plea, holding that he failed to state a prima facie Bangert violation because he was correctly *421 advised of each of the component parts of the 23 year 6 month maximum potential punishment of imprisonment.* As the circuit court put it:
I'm satisfied the defendant has not made a prima facie case that the plea was made anything but knowingly and voluntarily. I think he knew fully well. I think if you look at that transcript, I went piecemeal by piecemeal, twelve point five, five, six, I went through exactly why it was being added on. He knew his base and he knew exactly each reason why the numbers would be added on. They are consistent with the information placed in the information.
Now, in essence what he wants to claim is, oh, in that case it should get me out of this plea. I think where the information is provided clearly orally, and I think I'm required to provide the length of the sentence orally ... I think I'm required actually to tell him what his maximum penalty is orally on the offense.
So, I orally have him sitting in that chair exactly right there. We are this distance apart, and I went over the base penalty and the reason why he was receiving each of the enhancements and what the enhancement was. Now, clearly he hasn't made a prima facie case to this Court that he didn't make that plea knowingly and voluntarily.
¶ 38. Finley appealed the circuit court's denial of his motion. The court of appeals reversed and remanded the matter to the circuit court in an unpublished per curiam decision.[23]
¶ 39. In this first appeal to the court of appeals, the court of appeals held that Finley had established a Bangert violation as a matter of law: (1) Finley made a *422 prima facie showing that both the circuit court and defense counsel misinformed him of the potential punishment he faced if convicted; and (2) Finley alleged that he did not know or understand the information regarding the potential punishment — information that should have been provided to him at the plea hearing.[24]
¶ 40. The court of appeals also rejected as undeveloped the State's arguments that " '[t]he present case involves small deviations [from the correct maximum potential punishment] that are insufficient to establish a prima facie Bangert violation,' " and that Finley should be presumed to have understood the potential punishment, based on the circuit court's recitation of the component parts of the maximum statutory penalty.[25]
¶ 41. As the court of appeals explained, the State's argument that Finley was correctly advised of the potential punishment he faced by pleading no contest would require Finley to do more than simply add up the parts of the sentence listed by the circuit court. Instead, Finley would have to first recognize and differentiate between numerous undefined terms used by the circuit court (i.e., "maximum penalty," "impris *423 onment,"* "base penalty," "incarceration period," "enhancement," "term of imprisonment," and "confinement" *), then add up the component parts listed by the circuit court, finally disregarding the circuit court's statement that he faced "nineteen years six months confinement."[26]
¶ 42. The court of appeals concluded: "Thus, even if the GED-holding Finley was sophisticated enough to do the math himself, he, and we, would have to conclude that he knew better than both his attorney and the court."[27]
| 43. As a result, the court of appeals " remand [ed] [the matter to the circuit court] to allow the State the opportunity to prove that Finley nonetheless knew the maximum [statutory] penalty he faced at the time he entered his plea."[28]
¶ 44. On remand, the circuit court held an evi-dentiary hearing on Finley's motion to withdraw his plea. At the hearing, as Bangert directs, the State bore the burden of proving, by clear and convincing evidence, that Finley knew the potential punishment he faced despite the inadequacy of the record at the time of the plea acceptance.[29]
¶ 45. As the court of appeals put it, " [T]he State's efforts with regard to this directive were minimal; so much so that, on appeal, the State has now abandoned any argument that it met its burden, at least with *424 respect to Finley's knowledge, at the time he pled, of the correct maximum penalty he faced."[30]
¶ 46. At the evidentiary hearing, the State called just one witness, Finley's defense counsel. Finley did not testify. Defense counsel testified that his usual practice was to cover the maximum statutory penalty with a defendant when discussing a plea offer and that he believed Finley was aware of the potential punishment he faced if convicted. On cross-examination, however, defense counsel stated as follows:
Q: Would it be your practice when meeting with your client to go through the plea questionnaire line by line?
A: Yes.
Q: And when you got to the understandings, would it be your practice to read off for him the "nineteen years six months confinement?"
A: Yes.
¶ 47. Moreover, trial counsel stated that he had no specific recollection of advising Finley of the maximum statutory penalty.
¶ 48. Although Finley's postconviction motion argued primarily for plea withdrawal, Finley included an alternative argument that his sentence should be reduced (commuted) to the maximum he thought he could receive, 19 years 6 months, based on Taylor. Finley withdrew this alternative argument at the hearing, stating that plea withdrawal "is the only claim that we are making."
¶ 49. Despite Finley's withdrawal of the reduction (commutation) request, the circuit court concluded that Finley "is entitled to have his sentence modified to *425 no more than the amount that was represented to him by the Court and stated on his Plea Questionnaire and Waiver of Rights Form and that was nineteen years and six months." After reducing Finley's sentence from the maximum statutory penalty of 23 years, 6 months' imprisonment to 19 years, 6 months' imprisonment, the circuit court denied Finley's motion for plea withdrawal.
¶ 50. Although the circuit court made minimal findings at the evidentiary hearing, the circuit court subsequently issued a more fully developed written decision/order reducing Finley's sentence and denying Finley's motion for plea withdrawal. In the circuit court's written decision/order, the circuit court found "that the State met its burden of establishing that Finley knew the maximum penalty he faced at the time he entered his plea. However, the Court also believes that it is in the interest of justice to commute Finley's sentence to the maximum represented to him by the Court at the time of sentencing."
| 51. In reducing (commuting) Finley's sentence and denying Finley's motion to withdraw his plea, the circuit court relied on this court's decisions in Bangert, Cross, and Taylor as well as Wis. Stat. § 973.13.[31]
*426 ¶ 52. Again, Finley appealed the circuit court's denial of his motion for plea withdrawal. In this second appeal, Finley asserted that the circuit court erred in finding that the State had met its burden of proving, by clear and convincing evidence, that Finley knew the potential punishment he faced when he entered his plea.
f 53. In the second appeal in the court of appeals, the court of appeals viewed the State as having abandoned the argument that it satisfied its burden of establishing that Finley knew, when he entered his plea, the potential punishment he faced if convicted.[32]
¶ 54. The court of appeals reversed the circuit court's decision/order denying Finley's motion for plea withdrawal; this is the published decision that we are now reviewing.[33] The court of appeals relied on its previous conclusion that Finley had established a Bangert violation as a matter of law as well as the State's concession that it failed, at the evidentiary hearing, to show that despite the Bangert violation Finley knew, when he entered his plea, the potential punishment he faced if convicted.
¶ 55. The court of appeals discussed the State's reliance on Cross and Taylor at length and distinguished these cases from the instant case. According to the court of appeals, because Finley's plea was not entered knowingly, intentionally, and voluntarily, the Bangert violation was not curable after the fact by reducing (commuting) the sentence to the maximum *427 amount Finley was told that he faced if convicted. The court of appeals remanded the matter to the circuit court with instructions to grant Finley's motion for plea withdrawal.
¶ 56. This court granted the State's petition for review.
h-H I — I
¶ 57. Whether a plea colloquy violates Wis. Stat. § 971.08 or other mandatory duty is a question of law that this court determines independently of the circuit court or court of appeals but benefiting from their analyses.[34]
¶ 58. When a defendant seeks to withdraw a guilty or no contest plea after sentencing, he or she must prove by clear and convincing evidence that refusing to allow plea withdrawal would result in a "manifest injustice."[35] One way to show manifest injustice is to show that the plea was not entered knowingly, intelligently, and voluntarily.[36]
¶ 59. Whether a defendant's plea was entered knowingly, intelligently, and voluntarily is a question of constitutional fact.[37] An appellate court upholds the *428 circuit court's findings of historical fact unless they are clearly erroneous.[38] This court independently determines as a matter of law whether the circuit court's findings of historical fact demonstrate that the defendant's plea was knowing, intelligent, and voluntary, while benefiting from the analyses of the circuit court and the court of appeals.[39]
f 60. Determining the remedy when the State fails to demonstrate that it met the constitutional requirement that the defendant knowingly, intelligently, and voluntarily entered his plea presents a question of law. Withdrawal of the plea is a matter of right under these circumstances.[40]
I — I h-H
¶ 61. We begin by examining the remedies the State and Finley propose in the instant case. As we explained previously, in the State's view, a plea is *429 knowing, intelligent, and voluntary in the constitutional sense (as the State views this phrase) even if the defendant is misinformed about the potential punishment if convicted, so long as the sentence the defendant ultimately receives does not exceed the maximum sentence the circuit court told the defendant he could receive.
¶ 62. The State urges that this remedy of reducing (commuting) the sentence to fit what the defendant was told he faced is appropriate in the instant case.
¶ 63. According to the State, Finley knew, based on the circuit court's colloquy, that he faced a sentence of 19 years, 6 months' confinement in prison.* The circuit court ultimately imposed a sentence of 19 years, 6 months' imprisonment* (after his Bangert motion and a successful appeal). The State concludes that this reduction (commutation) remedy is appropriate: Finley knowingly, intelligently, and voluntarily entered a plea that he knew exposed him to a potential punishment of 19 years, 6 months' confinement in prison,* and he ultimately received a sentence of 19 years, 6 months' imprisonment,* which is less than 19 years, 6 months' confinement in prison.*
f 64. The State asserts that State v. Cross, 2010 WI 70, 326 Wis. 2d 492, 786 N.W.2d 64, and State v. Taylor, 2013 WI 34, 347 Wis. 2d 30, 829 N.W.2d 482, suggest that when a defendant is misinformed about the potential punishment, sentence reduction (commutation) is an appropriate remedy.
¶ 65. Thus, we examine Cross and Taylor to determine whether they govern the instant case.
¶ 66. We begin with Cross. Prior to entering a guilty plea, the defendant was misinformed by the State, the circuit court, and Cross's attorney that he faced a higher potential punishment than the law *430 actually authorized — 40 years' imprisonment* with a maximum initial confinement* of 25 years, rather than the 30 years' imprisonment* with 20 years' maximum initial confinement* set forth in the statute.[41]
¶ 67. After the circuit court imposed a sentence of 40 years imprisonment,* Cross discovered that his offense should have carried a maximum penalty of 30 years' imprisonment* with 20 years' maximum initial confinement. *[42]
¶ 68. Cross moved to withdraw his plea, arguing that it was not knowingly, intelligently, and voluntarily entered because he was misinformed of a higher potential punishment than was allowable by statute and was unaware of the potential punishment.[43] Cross sought an evidentiary hearing under Bangert. The circuit court denied an evidentiary hearing and Cross's motion to withdraw his plea.[44] The circuit court resen-tenced Cross to the correct maximum statutory penalty.[45]
¶ 69. On appeal to this court, Cross argued that he had made a prima facie showing of a Bangert violation because the potential punishment was incorrectly communicated and he was unaware of the potential punishment if convicted. Cross argued that under these circumstances his plea was not knowingly, intelligently, and voluntarily entered and that he was entitled to withdraw his plea as a matter of right.
¶ 70. This court disagreed with Cross. The court concluded that it is not necessarily a Bangert violation when a defendant is told that he faces a higher "but *431 not substantially higher" potential punishment than is, in fact, available.[46] The Cross court stated that although the circuit court misinformed Cross about the maximum statutory penalty, the circuit court had "fulfilled its duty to inform the defendant of the range of punishments;"[47] that Cross understood the potential punishment;[48] and that the plea was knowingly, intelligently, and voluntarily entered.[49] The Cross court also concluded that "a defendant's due process rights are not necessarily violated when he is incorrectly informed of the maximum potential imprisonment."[50] As the Cross court noted, "[w]hen given a greater sentence than that authorized by law, which presumably would also involve an error in the understanding of the possible maximum penalty, the remedy here is a commuted sentence, not plea withdrawal," under Wis. Stat. § 973.13.[51]
f 71. To quote Cross,
[A] defendant can be said to understand the range of punishments as required by § 971.08 and Bangert when the maximum sentence communicated to the defendant is higher, but not substantially higher, than the actual allowable sentence. This accords with common sense; not all small deviations from the requirements in our Bangert line of cases equate to a Bangert violation and require a formal evidentiary hearing.[52]
As a result, the court in Cross did not allow the defendant to withdraw his plea.
*432 ¶ 72. The Cross court did, however, qualify its conclusion, noting that "when the defendant is told the sentence is lower than the amount allowed by law, a defendant's due process rights are at greater risk and a Bangert violation may be established."[53]
¶ 73. In sum, the key facts in Cross leading to denial of plea withdrawal were that the penalty communicated to the defendant was not substantially higher than the potential punishment and the court viewed the defendant as having understood the potential punishment as required by Wis. Stat. § 971.08 and Bangert.
f 74. In the instant case, the facts are substantially different from those in Cross. Finley was mistakenly informed by the circuit court that he faced a different potential punishment than the maximum statutory penalty, and Finley did not know the maximum statutory penalty. Moreover, unlike in Cross, Wis. Stat. § 973.13, which commutes a sentence imposed that exceeds the maximum statutory penalty, does not provide a remedy in the instant case, in which the sentence initially imposed (although at the plea colloquy the circuit court advised otherwise) did not exceed the maximum statutory penalty.[54]
¶ 75. We turn now to the Taylor case. The facts in Taylor appear (at first blush) to be an example of what the Cross court foresaw as a "greater risk" to due process rights, that is, telling a defendant the maximum potential punishment is lower than it actually is.[55]
*433 ¶ 76. In Taylor, the defendant was a repeat offender facing an eight-year sentence — six years' imprisonment* for uttering a forgery plus a two-year enhancement for prior offenses.[56] Taylor pleaded no contest to the offense at a plea hearing at which the circuit court stated that it "could impose the maximum penalty here of a $10,000 fine or six years in prison or both."[57] Although the circuit court's colloquy mentioned the repeater allegation several times, the circuit court did not explicitly inform Taylor that he faced an additional two-year enhancement as a repeater.[58]
¶ 77. After the circuit court sentenced Taylor to six years' imprisonment,* Taylor moved to withdraw his no contest plea, arguing, among other things, that his plea was not entered knowingly, intelligently, and voluntarily.[59] The circuit court denied Taylor's motion, and this court affirmed the circuit court.
¶ 78. The Taylor court concluded that the circuit court record was "replete with evidence" that Taylor was informed and aware of the potential punishment of eight years' imprisonment* he faced if convicted.[60] Among other things, the plea questionnaire/waiver of rights form, information, and criminal complaint all informed Taylor of the maximum potential punishment of eight years' imprisonment.*[61]
¶ 79. We held that Taylor's "plea was entered knowingly, intelligently, and voluntarily [because] the *434 record makes clear that the defendant knew the maximum penalty that could be imposed and was verbally informed at the plea hearing of the penalty that he received. Therefore, the circuit court did not err by denying Taylor's postconviction motion to withdraw his no contest plea."[62]
¶ 80. In sum, in Taylor, the potential punishment communicated to the defendant was lower than the maximum statutory penalty. The record demonstrated, however, that Taylor knew the potential punishment when he entered his plea, even though the circuit court's plea colloquy did not correctly advise him of the potential punishment. Under these facts, the Taylor court agreed with the circuit court's decision that the plea was knowingly, intelligently, and voluntarily entered: The defendant knew the potential punishment and was given the sentence the circuit court advised. Taylor was not entitled to withdraw his plea.[63]
¶ 81. Cross and Taylor demonstrate that a circuit court's failure to correctly advise a defendant in the plea colloquy of the potential punishment he faces does not automatically permit a defendant to withdraw his or her plea. In these cases, the defendants knew the potential punishment and were given the sentence the circuit court described.
¶ 82. Although Cross and Taylor have some similarities to the instant case, the facts in Cross and Taylor are significantly different from the facts in the instant case and therefore do not govern our decision.
¶ 83. In Cross, this court held that the insubstantial misstatement of the potential punishment did not *435 constitute a Bangert violation.[64] In Taylor, the court held that the circuit court record made clear that the defendant knew the potential punishment.[65]
¶ 84. As a result, in both Cross and Taylor, no evidentiary hearing was needed.[66]
¶ 85. In the instant case, there was a Bangert violation and an evidentiary hearing was held.[67] The record in the instant case does not establish that Finley knew the information about potential punishment about which he was misinformed during the plea colloquy. On the contrary, after the evidentiary hearing, the State "abandoned any argument that it met its burden, at least with respect to Finley's knowledge, at the time he pled, of the correct maximum penalty he faced."[68] In this court, the State acknowledges that Finley did not know the potential punishment he faced when he entered his plea.
¶ 86. The State argues that the remedy in Finley's case is sentence reduction (commutation). The State asserts that as long as Finley ultimately receives a sentence that he was informed he could get and that sentence is less than or equal to the maximum statutory penalty, Finley's plea was knowing, intelligent, and voluntary for constitutional purposes. *436 No Wisconsin or United States Supreme Court case supports the State's proposition.[69]
¶ 87. The State relies on Taylor in proposing its resolution of the instant case despite the differences between the instant case and Taylor that we outlined above. In Taylor, unlike in the instant case, the circuit court record revealed that the defendant knew the potential punishment he faced if convicted.
¶ 88. We conclude that the facts and circumstances of Finley's case are more like those in Bangert and Brown than those in Cross or Taylor.
¶ 89. As in Bangert and Brown, Finley's plea colloquy was deficient and his postconviction motion demonstrated a prima facie Bangert violation.
f 90. In Bangert, the circuit court's plea colloquy failed to adequately establish that the defendant understood the nature of the charges to which he pleaded.[70] An evidentiary hearing was held at which the State met its burden of proving that the defendant knowingly, intelligently, and voluntarily entered his plea.[71] Thus, the defendant in Bangert was not entitled to withdraw his plea.[72] Had the State not met its burden, however, it appears that the defendant would have been entitled to withdraw his plea.[73]
*437 ¶ 91. In Brown, the circuit court's plea colloquy failed to adequately establish that the defendant understood the nature of the charges to which he pleaded as well as the constitutional rights he waived.[74] The Brown court concluded that Brown adequately alleged that he did not understand the nature of the charges to which he pleaded or the constitutional rights he waived.[75] As a result, the Brown court remanded the cause for an evidentiary hearing, at which the State had the burden of proving that Brown understood the charges to which he pleaded and the constitutional rights he waived despite the deficiencies at the plea hearing.[76] If the State did not meet its burden at the evidentiary hearing, it appears the defendant would have been entitled to withdraw the plea.[77]
*438 ¶ 92. Bangert and Brown stand for the proposition that when a plea colloquy is deficient and the defendant alleges that he did not know or understand the information that should have been provided in the plea colloquy, the defendant is entitled to an evidentiary hearing at which the State has an opportunity to prove by clear and convincing evidence that the defendant knowingly, intelligently, and voluntarily entered his plea.[78] If the State fails to meet its burden at the evidentiary hearing, the defendant is entitled to withdraw his plea.[79]
¶ 93. In the instant case, Finley had an eviden-tiary hearing. The State does not contest that Finley did not know, when he entered his plea, of the potential punishment if convicted.
¶ 94. In sum, in the posture of the instant case, Finley did not know when he entered his plea of the potential punishment he faced if convicted. As in Bangert and Brown, the State had the opportunity in the instant case to prove the defendant's knowledge of the information set forth in Wis. Stat. § 971.08(l)(a) and the case law. A defendant's lack of understanding of the potential punishment when he or she enters a guilty or no contest plea is relevant for determining whether the plea was entered knowingly, intelligently, and voluntarily. The rule in Bangert and Brown is that if the State cannot meet its burden of proof, the defendant is entitled to withdraw his plea.
¶ 95. Under the circumstances of the instant case, Bangert, Brown, Cross, and Taylor lead us to conclude that Finley is entitled to withdraw his plea: *439 The circuit court misinformed Finley of the potential punishment he faced if convicted, information the circuit court was required to give the defendant; and the State failed to prove that when Finley entered his plea he knew the potential punishment he faced if convicted. The case law tells us that under these circumstances Finley was entitled to withdraw his plea. Bangert, 131 Wis. 2d at 283 ("When a defendant established a denial of a relevant constitutional right, withdrawal of the plea is a matter of right."); Brown, 293 Wis. 2d 594, ¶ 19 ("When a guilty plea is not knowing, intelligent, and voluntary, a defendant is entitled to withdraw the plea as a matter of right because such a plea 'violates fundamental due process.' ") (quoting Van Camp, 213 Wis. 2d at 139); see also Cross, 326 Wis. 2d 492, ¶ 20 ("If the State cannot meet its burden [of proving by clear and convincing evidence that the plea was knowing, voluntary, and intelligent despite the deficiencies of the plea hearing,] the defendant is entitled to withdraw his plea as a matter of right.") (citing Van Camp, 213 Wis. 2d at 139).
¶ 96. Accordingly, we affirm the decision of the court of appeals and remand the cause to the circuit court with instructions to grant Finley's motion to withdraw his plea.
By the Court. — The decision of the court of appeals is affirmed and the cause is remanded to the circuit court.

ATTACHMENT A: GLOSSARY

1. Indeterminate sentencing and Truth in Sentencing: Although Wisconsin's sentencing system shifted from indeterminate sentencing to truth in sentencing in 1998, see 1997 Wis. Act 283, the *440 requirements of Wis. Stat. § 971.08(l)(a) and the case law regarding the circuit court's duties in a plea colloquy have remained substantially the same over the years. Compare, e.g., Bangert, 131 Wis. 2d at 260-62 (discussing the requirements of Wis. Stat. § 971.08 and the general duties of the trial court prior to accepting a guilty or no contest plea under Wisconsin's indeterminate sentencing system), with Brown, 293 Wis. 2d 594, ¶¶ 22-35 ("[R]estat[ing] and supplement [ing] the Bangert outline" under the truth in sentencing system).
2. Truth in Sentencing Terminology:
A. Bifurcated Sentence. A bifurcated sentence is a sentence that consists of a term of confinement in prison followed by a term of extended supervision. The total length of a bifurcated sentence may not exceed the maximum period of imprisonment set forth in § 939.50(3) (and other statutes). See Wis. Stat. § 973.01(1), (2).
"Imprisonment;" "Confinement in Prison;" "Extended Supervision." "Imprisonment" refers to both parts of a bifurcated sentence: the period of initial confinement in prison plus the period of extended supervision. "Imprisonment" and "confinement in prison" are thus not synonymous. See Wis. Stat. § 973.01(1); State v. Jackson, 2004 WI 29, ¶ 5 n.4, 270 Wis. 2d 113, 676 N.W.2d 872 ("Under Truth-in-Sentencing legislation, the term 'imprisonment' does not mean time in prison. Rather, 'imprisonment' consists of both the time of confinement (in prison) and the time following the confinement spent on extended supervision."); State v. Cole, 2003 WI 59, ¶ 16, 262 Wis. 2d 167, 663 N.W.2d 700 ("Section 973.01 used the word 'imprisonment' to refer to a 'bifurcated sentence' consisting of 'a term of *441 confinement in prison followed by a term of extended supervision(quoting Wis. Stat. § 973.01(1)).
Extended supervision may be imposed in addition to confinement in prison and is part of the total period of imprisonment. Wisconsin Stat. § 973.01(2)(d) sets the minimum and maximum term of extended supervision as follows:
The term of extended supervision may not be less than 25% of the length of the term of confinement in prison imposed under par. (b) and, for a classified felony, is subject to whichever of the following limits is applicable:
1. For a Class B felony, the term of extended supervision may not exceed 20 years.
2. For a Class C felony, the term of extended supervision may not exceed 15 years.
3. For a Class D felony, the term of extended supervision may not exceed 10 years.
4. For a Class E, F, or G felony, the term of extended supervision may not exceed 5 years.
5. For a Class H felony, the term of extended supervision may not exceed 3 years.
6. For a Class I felony, the term of extended supervision may not exceed 2 years.
3. Potential Punishment: The statutory phrase "potential punishment" has not been defined in the statutes or the case law. In analyzing whether a defendant was correctly advised of the potential punishment, our cases have looked to the maximum statutory penalty, that is, the maximum sentence provided for by statute.
*442 Wisconsin Stat. § 939.50(3) sets forth the maximum statutory penalty for felonies. Other statutes add enhancements to the penalties specified in Wis. Stat. § 939.50(3). For example, there are enhancements for repeater offenses, domestic abuse offenses, or for offenses committed with the use of a dangerous weapon. See, e.g., Wis. Stat. §§ 939.62, 939.621, 939.63.
4. Range of Punishments: Some cases use the phrase "range of punishments" in addition to or in place of "potential punishment." "Range of punishments," "potential punishment," "maximum statutory penalty," and various other phrases are used synonymously in the cases to mean "potential punishment."
See, e.g., State v. Bangert, 131 Wis. 2d at 260-61 (quoting Wis. Stat. § 971.08(l)(a)'s reference to "potential punishment," and referring to the "range of punishments"); State v. Brown, 293 Wis. 2d 594, ¶¶ 3, 35, 44 (quoting Wis. Stat. § 971.08(l)(a)'s reference to "potential punishment" and referring to the "range of punishments"); State v. Taylor, 2013 WI 34, ¶¶ 31, 33, 37, 41, 42 n.12, 347 Wis. 2d 30, 829 N.W.2d 482 (referring interchangeably to the "potential punishment," "maximum term of imprisonment," "maximum penalty," "range of punishments," and "sentence"); State v. Cross, 2010 WI 70, ¶¶ 3, 11, 28, 35, 37-38, 326 Wis. 2d 492, 786 N.W.2d 64 (referring interchangeably to "range of punishments," "maximum potential sentence," "maximum potential imprisonment," "maximum initial sentence," "actual allowable sentence," and "precise maximum sentence").
Circuit courts do not usually advise a defendant of the minimum statutory penalty, for example, probation if applicable, through the various possible sentences up to the maximum statutory penalty (including any enhancements) set forth in the *443 felony statutes. Circuit courts do, however, generally advise a defendant of a presumptive or mandatory minimum sentence. See State v. Chamblis, 2015 WI 53, ¶ 24, 362 Wis. 2d 270, 864 N.W.2d 806 (citing State v. Mohr, 201 Wis. 2d 693, 700, 549 N.W.2d 497 (Ct. App. 1996)); see also State v. Thompson, 2012 WI 90, ¶ 51, 342 Wis. 2d 674, 818 N.W.2d 904. A circuit court need not advise a defendant of the division between confinement in prison and extended supervision. See Taylor, 347 Wis. 2d 30, ¶ 42 n.12 ("We have never held, and we do not hold today, that the court must parse out and specifically advise the defendant of the potential term of confinement and also the potential term of extended supervision at the plea colloquy.").

 All subsequent references to the Wisconsin Statutes are to the 2011-12 version unless otherwise indicated.

 Wisconsin Stat. § 971.08(l)(a) provides in relevant part:
*406 (1) Before the court accepts a plea of guilty or no contest, it shall do all of the following:
(a) Address the defendant personally and determine that the plea is made voluntarily with understanding of the nature of the charge and the potential punishment if convicted.
State v. Bangert, 131 Wis. 2d 246, 261-62, 389 N.W.2d 12 (1986), sets forth six mandatory duties of circuit courts in accepting a plea. State v. Brown, 2006 WI 100, ¶ 35, 293 Wis. 2d 594, 716 N.W.2d 906, restates and supplements the mandatory duties set forth in Bangert. Only the circuit court's duty to advise the defendant of the punishment is at issue in the instant case.

 See, e.g., Brown, 293 Wis. 2d 594, ¶ 35; Bangert, 131 Wis. 2d at 262; see also State v. Cross, 2010 WI 70, ¶ 50, 326 Wis. 2d 492, 786 N.W.2d 64 (Abrahamson, C.J., concurring) ("Bangert and Brown interpreted 'potential punishment if convicted' to mean 'the range of punishments to which he [the defendant] is subjecting himself by entering a plea.'") (citing Bangert, 131 Wis. 2d at 261-62; Brown, 293 Wis. 2d 594, ¶ 35).

 See Attachment A, Glossary, at item 4 (collecting cases using the terms "maximum term of imprisonment," "maximum penalty," "maximum potential sentence," "maximum potential imprisonment," "maximum initial sentence," "actual allowable sentence," and "precise maximum sentence" as synonyms of "potential punishment" and "maximum statutory penalty").

 Wisconsin Stat. § 939.50(3) provides:
(3) Penalties for felonies are as follows:
(a) For a Class A felony, life imprisonment.
(b) For a Class B felony, imprisonment not to exceed 60 years.
(c) For a Class C felony, a fine not to exceed $100,000 or imprisonment not to exceed 40 years, or both.
(d) For a Class D felony, a fine not to exceed $100,000 or imprisonment not to exceed 25 years, or both.
(e) For a Class E felony, a fine not to exceed $50,000 or imprisonment not to exceed 15 years, or both.
(f) For a Class F felony, a fine not to exceed $25,000 or imprisonment not to exceed 12 years and 6 months, or both.
(g) For a Class G felony, a fine not to exceed $25,000 or imprisonment not to exceed 10 years, or both.
(h) For a Class H felony, a fine not to exceed $10,000 or imprisonment not to exceed 6 years, or both.
(i) For a Class I felony, a fine not to exceed $10,000 or imprisonment not to exceed 3 years and 6 months, or both.

 We do not use an asterisk each time we use the statutory phrase "potential punishment" or "maximum statutory penalty" because these terms have been defined in the text. See supra ¶ 4.

 The State acknowledges that the circuit court misinformed Finley about the potential punishment he faced if convicted. The State also acknowledges that it was not able to prove (after being given the opportunity to do so at an evidentiary hearing) that Finley knew the maximum statutory penalty when he entered his plea. As the State put it in its opening brief, "The issue on this appeal is not whether Finley knew the correct maximum penalty. The state has acknowledged that he did not. The record shows that Finley was erroneously informed and believed that the maximum penalty was 19.5 years rather than the actual maximum of 23.5 years." Brief of Plaintiff-Respondent-Petitioner at 7-8 (emphasis added).

 The parties view this case as presenting a fact situation in which the circuit court understated the potential punishment if convicted. One may, however, view the circuit court as having overstated the potential punishment if convicted. The record shows that Finley was erroneously informed that he faced a potential punishment of 19 years, 6 months of confinement in prison.* The actual maximum statutory penalty was 23 years, 6 months of imprisonment,* consisting of 18 years, 6 months of confinement in prison* and 5 years of extended supervision.*
Whether the circuit court's statement of the potential punishment should be characterized as having over or understated the potential punishment is not relevant to the disposition of the instant case. See infra f ¶ 88-95.

 Brown, 293 Wis. 2d 594, ¶ 23 (citing Boykin v. Alabama, 395 U.S. 238, 242 (1969)).

 See Bangert, 131 Wis. 2d at 261 n.3 ("A violation of section 971.08, though itself not constitutionally significant, may have constitutional ramifications.").

 In Bangert, the court stated that " [a]lthough section 971.08 is not a constitutional imperative, the procedure of the statute nevertheless is designed to assist the trial court in making the constitutionally required determination that a defendant's plea is voluntary." 131 Wis. 2d at 261 (citing McCarthy v. United States, 394 U.S. 459, 465 (1969)).

 Brown, 293 Wis. 2d 594, ¶ 25 (citing Bangert, 131 Wis. 2d at 260 (emphasis in original).

 Brown, 293 Wis. 2d 594, ¶ 19 (quoting State v. Van Camp, 213 Wis. 2d 131, 139, 569 N.W.2d 577 (1997)). See also State v. Cross, 2010 WI 70, ¶ 20, 326 Wis. 2d 492, 786 N.W.2d 64.

 We use the phrase "reduced (commuted)" because the parties use both "reduced" and "commuted" in discussing the remedy in the instant case. As we explain further below, the use of the word "commuted" is apparently derived from Wis. Stat. § 973.13, a statute that is not implicated in the instant case. See infra n.31.

 See Brown, 293 Wis. 2d 594, ¶ 24.

 See Brown, 293 Wis. 2d 594, ¶ 6 ("If the State cannot prove by clear and convincing evidence that Brown understood the nature of the charges and the constitutional rights he gave up, the circuit court shall grant Brown's motion to withdraw *414 his guilty pleas."); Bangert, 131 Wis. 2d at 274 ("Whenever the Section 971.08 procedure is not undertaken or whenever the court-mandated duties are not fulfilled at the plea hearing, the defendant may move to withdraw his plea.").

 The State's brief (Brief for Plaintiff-Respondent-Petitioner) at page 8 asserts: "The single issue presented for decision is whether the only remedy for this error is plea withdrawal, or whether the error can be better remedied by reduction of [the defendant's] sentence to the maximum penalty he was informed and believed he could receive."
In a very different context than the instant case, this court concluded that due process required a defendant be permitted to keep the sentence he was told he could receive (and did receive). See State v. Chamblis, 2015 WI 53, ¶¶ 54-55, 362 Wis. 2d 370, 864 N.W.2d 806.
In State v. Chamblis, the defendant was advised of the correct potential punishment for the charged offense prior to entering a guilty plea. Chamblis, 362 Wis. 2d 370, ¶ 1. After his plea was entered and he was sentenced, however, the State appealed, arguing that the circuit court should have considered evidence showing the defendant should have faced a more serious charge with a higher potential punishment. Chamblis, 362 Wis. 2d 370, ¶ 2.
The State argued that the remedy for the circuit court's failure to consider the evidence of the more serious charge should be mandatory plea withdrawal. Chamblis, 362 Wis. 2d 370, ¶ 53. The defendant argued he should be permitted to *415 keep the sentence he received and that he did not seek plea withdrawal. Chamblis, 362 Wis. 2d 370, ¶ 52.
The court agreed with the defendant, holding that forcing the defendant to withdraw his plea and face a more serious charge with a higher potential punishment would violate due process. Chamblis, 362 Wis. 2d 370, ¶ 54.

 Some members of the court have in previous cases expressed concern that there should be (at least in certain circumstances) a time limit on motions for plea withdrawal. See, e.g., State v. Romero-Georgana, 2014 WI 83, ¶ 67 n.14, 360 Wis. 2d 552, 849 N.W.2d 668 (suggesting that a time limit may be necessary for motions for plea withdrawal based on Wis. Stat. § 971.08(2)). We do not address whether there is such a time limit for motions for plea withdrawal because Finley's motion for plea withdrawal is timely. Finley filed his motion for plea withdrawal less than two months after the circuit court entered its amended judgment of conviction.

 The criminal complaint stated the potential punishment for the first count, first-degree reckless endangerment with use of a dangerous weapon, was a fine of not more than $25,000, " imprison [ment of] not more than twelve (12) years and six (6) months, or both." The criminal complaint also noted that "the maximum term of imprisonment for the felony may be increased by not more than 5 years" for the use of a dangerous weapon.
In the information, the State listed the potential punishments identified in the criminal complaint and added a habitual criminality enhancer under Wis. Stat. § 939.62(l)(c). Based on Finley's prior convictions, this enhancement could increase "the maximum term of imprisonment for the underlying crime ... by not more than 6 years."

 The pre-sentencing investigation report, completed after the circuit court had already accepted Finley's plea, similarly stated the potential punishment broken down into its component parts.

 "Incarceration period" is not a defined term in the statutes. It might be interpreted to mean the statutory words "imprisonment"* or "confinement in prison."*

 Bangert and Brown set forth the procedures applicable when a defendant seeks plea withdrawal based on an alleged violation of a circuit court's statutory or other mandatory duties pertaining to the taking of a defendant's plea.
*420 First, the defendant must make a prima facie case showing that his or her plea was accepted without the circuit court’s compliance with Wis. Stat. § 971.08 or other mandatory procedures. Bangert, 131 Wis. 2d at 274.
Second, the defendant must allege that he or she did not "know or understand the information that should have been provided at the plea hearing." Brown, 293 Wis. 2d 594, ¶ 39.
When the defendant has made a prima facie showing and adequately alleged that he or she did not know or understand the information that should have been provided at the plea hearing, the burden shifts to the State to show by clear and convincing evidence that the defendant's plea was knowingly, intelligently, and voluntarily entered despite the inadequacy of the record when the plea was entered. See Brown, 293 Wis. 2d 594, ¶ 40 (citing Bangert, 131 Wis. 2d at 274).

 See State v. Finley, No. 2013AP1846-CR, unpublished slip op., ¶ 16 (Wis. Ct. App. Mar. 18, 2014).

 See Finley, No. 2013AP1846-CR, unpublished slip op., ¶ 16 (citing Brown, 293 Wis. 2d 594, ¶ 21).
A defendant is entitled to an evidentiary hearing on a motion to withdraw a guilty plea when (1) the defendant makes a prima facie showing that the circuit court's plea colloquy did not conform with § 971.08 or other procedures mandated at a plea hearing; and (2) the defendant alleges he did not know or understand the information that should have been provided at the plea hearing.
Brown, 293 Wis. 2d 594, ¶ 2 (citations omitted).

 See Finley, No. 2013AP1846-CR, unpublished slip op., ¶¶ 8-13.

 Finley, No. 2013AP1846-CR, unpublished slip op., ¶ 12.

 Finley, No. 2013AP1846-CR, unpublished slip op., ¶ 12.

 Finley, No. 2013AP1846-CR, unpublished slip op., ¶ 16.

 "In essence, the state will be required to show that the defendant in fact possessed the constitutionally required understanding and knowledge which the defendant alleges the inadequate plea colloquy failed to afford him." Bangert, 131 Wis. 2d at 275 (citation omitted).

 Finley, 365 Wis. 2d 275, ¶ 21.

 Finley appears to fall outside the plain text of Wis. Stat. § 973.13. The provision states:
In any case where the court imposes a maximum penalty in excess of that authorized by law, such excess shall be void and the sentence shall be valid only to the extent of the maximum term authorized by statute and shall stand commuted without further proceedings.
In the instant case, the circuit court imposed the maximum statutory penalty, 23 years, 6 months' imprisonment. The circuit court did not impose a maximum penalty in excess of that authorized by law, despite what the circuit court stated at the plea colloquy.

 Finley, 365 Wis. 2d 275, ¶ 3. The court of appeals also concluded that the State had conceded that it did not satisfy its burden at the evidentiary hearing in the circuit court. Finley, 365 Wis. 2d 275, ¶ 9.

 See State v. Finley, 2015 WI App 79, ¶ 37, 365 Wis. 2d 275, 872 N.W.2d 344.

 Brown, 293 Wis. 2d 594, ¶ 21; see also Taylor, 347 Wis. 2d 30, ¶ 26.

 Brown, 293 Wis. 2d 594, ¶ 18; see also Taylor, 347 Wis. 2d 30, ¶ 24.

 Brown, 293 Wis. 2d 594, ¶ 18; see also Taylor, 347 Wis. 2d 30, ¶ 24.

 State v. Dillard, 2014 WI 123, ¶ 38, 358 Wis. 2d 543, 859 N.W.2d 44 (citing Cross, 326 Wis. 2d 492, ¶ 14).

 Dillard, 358 Wis. 2d 543, ¶ 38 (citing State v. Dawson, 2004 WI App 173, ¶ 7, 276 Wis. 2d 418, 688 N.W.2d 12).

 Dillard, 358 Wis. 2d 543, ¶ 38 (citing State v. Hoppe, 2009 WI 41, ¶ 61, 317 Wis. 2d 161, 765 N.W.2d 794).

 See Bangert, 131 Wis. 2d at 283 ("When a defendant established a denial of a relevant constitutional right, withdrawal of the plea is a matter of right."); Brown, 293 Wis. 2d 594, ¶ 19 ("When a guilty plea is not knowing, intelligent, and voluntary, a defendant is entitled to withdraw the plea as a matter of right because such a plea 'violates fundamental due process.'") (quoting Van Camp, 213 Wis. 2d at 139); see also Cross, 326 Wis. 2d 492, ¶ 20 ("If the State cannot meet its burden [of proving by clear and convincing evidence that the plea was knowing, voluntary, and intelligent despite the deficiencies of the plea hearing,] the defendant is entitled to withdraw his plea as a matter of right.") (citing Van Camp, 213 Wis. 2d at 139).

 Cross, 326 Wis. 2d 492, ¶ 1.

 Cross, 326 Wis. 2d 492, ¶¶ 10-11.

 Cross, 326 Wis. 2d 492, ¶ 11.

 Cross, 326 Wis. 2d 492, ¶ 12.

 Cross, 326 Wis. 2d 492, ¶ 12.

 Cross, 326 Wis. 2d 492, ¶ 30.

 Cross, 326 Wis. 2d 492, ¶ 4.

 Cross, 326 Wis. 2d 492, ¶ 41.

 Cross, 326 Wis. 2d 492, ¶ 41.

 Cross, 326 Wis. 2d 492, ¶ 37.

 Cross, 326 Wis. 2d 492, ¶ 34.

 Cross, 326 Wis. 2d 492, ¶ 38.

 Cross, 326 Wis. 2d 492, ¶ 39 (emphasis added).

 See supra ¶¶ 9, 12 n.11, 33.

 Cross, 326 Wis. 2d 492, ¶ 39 (emphasis added).

 Taylor, 347 Wis. 2d 30, ¶ 1.

 Taylor, 347 Wis. 2d 30, ¶ 16.

 Taylor, 347 Wis. 2d 30, ¶ 2.

 Taylor, 347 Wis. 2d 30, ¶ 3.

 Taylor, 347 Wis. 2d 30, ¶ 35. The State may use any evidence in the record to prove a defendant's understanding at the time of entry of the plea. Taylor, 347 Wis. 2d 30, ¶ 32.

 Taylor, 347 Wis. 2d 30, ¶¶ 35-38.

 Taylor, 347 Wis. 2d 30, ¶ 8.

 Taylor, 347 Wis. 2d 30, ¶ 42.

 Cross, 326 Wis. 2d 492, ¶ 4.

 Taylor, 347 Wis. 2d 30, ¶ 34.

 See Cross, 326 Wis. 2d 492, ¶¶ 4, 38, 41; Taylor, 347 Wis. 2d 30, ¶¶ 4, 8, 18.

 The State did not seek review of the court of appeals' decision that there was a Bangert violation in Finley's case. The State further acknowledges that the plea colloquy misinformed Finley of the potential punishment he faced if convicted, and the State acknowledges that Finley did not otherwise know, when he entered his plea, of the potential punishment he faced if convicted.

 Finley, 365 Wis. 2d 275, ¶ 21.

 In a per cnriam opinion predating Bangert and Brown, this court did allow reduction (commutation) of a sentence to the sentence a defendant was told he could receive. The court also noted, however, that the defendant's plea was entered knowingly and voluntarily. See Preston v. State, 58 Wis. 2d 728, 729, 206 N.W.2d 619 (1973) (per curiam).

 Bangert, 131 Wis. 2d at 251.

 Bangert, 131 Wis. 2d at 284-86.

 See Bangert, 131 Wis. 2d at 285-86.

 See Bangert, 131 Wis. 2d at 283.

 Brown, 293 Wis. 2d 594, ¶ 5.

 Brown, 293 Wis. 2d 594, ¶ 79.

 Brown, 293 Wis. 2d 594, ¶ 79. The Brown court rejected, however, the defendant's argument that the circuit court violated Wis. Stat. § 971.08 and Bangert by failing to state in the plea colloquy that the punishment for each charge could run consecutively, stating:
Although the better practice is to advise the defendant of the cumulative maximum sentence he could receive from consecutive sentences, we do not believe the omission of such information should allow a defendant to withdraw a guilty plea in the absence of any allegation that the defendant did not understand the effect of multiple charges on his sentence.
Brown, 293 Wis. 2d 594, ¶ 78.

 Brown, 293 Wis. 2d 594, ¶ 36 ("Assuming the defendant's postconviction motion is adequate to require a hearing, he may withdraw his plea after sentencing as a matter of right unless the state can show the plea was entered knowingly, intelligently, and voluntarily, despite the deficiencies in the plea hearing.") (citing State v. Trochinski, 2002 WI 56, ¶ 17, 253 Wis. 2d 38, 644 N.W.2d 891; Van Camp, 213 Wis. 2d at 139).

 See Brown, 293 Wis. 2d 594, ¶¶ 58-59; Bangert, 131 Wis. 2d at 274.

 See Brown, 293 Wis. 2d 594, ¶ 36; Bangert, 131 Wis. 2d at 283; Cross, 326 Wis. 2d 492, ¶ 20.