COURT OF APPEALS
DECISION
DATED AND FILED

October 30, 2019

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.** **2018AP2206-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. 2016CF317

**IN COURT OF APPEALS
DISTRICT II**

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

CHRISTOPHER B. SHANNON,

   DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Walworth County:  KRISTINE E. DRETTWAN and PHILLIP A. KOSS, Judges. *Affirmed*.

Before Neubauer, C.J., Reilly, P.J., and Gundrum, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.   Christopher Shannon appeals from a judgment and an order of the circuit court denying his postconviction motion for plea withdrawal or, in the alternative, resentencing.[1]  For the following reasons, we affirm.

*Background*

¶2    Following a report that Shannon ate at a restaurant and left without paying, officers made contact with him in an attempt to investigate.  Shannon physically resisted and became violent while also making threats against the officers and some peculiar comments.  Shannon was charged with multiple counts related to this incident and entered pleas of not guilty and not guilty by reason of mental disease or defect (NGI plea).   The circuit court ordered a mental evaluation, which resulted in a doctor's opinion that did not support the NGI plea.  Shannon sought an alternative medical opinion, which resulted in a different doctor's report that supported an NGI plea on some, but not all, of the charges.

¶3    At the final pretrial conference, Shannon's counsel stated, with Shannon present, that counsel "was informed by Mr. Shannon" that he "desire[d] to accept the … plea agreement and not go to trial" and confirmed that he would be "withdrawing his NGI plea."  The offer, which was detailed on the record by counsel and again by the court, was that Shannon would plead to three of the five counts and the other two would be dismissed and read in, a presentence report would be prepared, and the parties would be free to argue at sentencing.  Shannon confirmed he "wish[ed] to accept that offer" and had had enough time to discuss it with counsel.  The court told Shannon, "You understand this means that you will

---

[1] The  Honorable  Kristine  E.  Drettwan  entered  the  judgment  of  conviction.   The Honorable Phillip A. Koss entered the order denying Shannon's postconviction motion.

be withdrawing your NGI plea, which is your plea of not guilty by reason of mental disease or defect. Is that what you want to do?" Shannon responded, "Yes, your Honor." The court stated that it was "satisfied that this offer has been conveyed to [Shannon] and that he has had an opportunity to discuss this with his attorney and is making a choice now to accept it." With that, the jury trial, set to begin five days later, was cancelled and the court scheduled a change-of-plea hearing for that date.

¶4 At that hearing, Shannon's counsel again recited the plea agreement, and Shannon again expressed that this was his agreement and he had had enough time to discuss it with counsel. Shannon pled guilty to the three charges, confirming he had read through the complaint and agreeing the circuit court could use the facts therein in support of his pleas. Shannon indicated he had read, understood, and signed the plea questionnaire form that had been presented to the court, was not receiving any mental health treatment, and had not consumed alcohol, medicine or drugs in the previous twenty-four hours. He indicated he had discussed with counsel the constitutional rights he was giving up by pleading, which were identified on the plea form, and that he understood he was giving up those rights, including the right to a trial. He confirmed he was withdrawing his NGI plea without promises or threats from anybody and had gone through the elements of the offenses with counsel. Counsel confirmed she believed Shannon "understands these proceedings" and was "freely, knowingly, intelligently and voluntarily waiving his rights and pleading guilty." The court found the same, accepted Shannon's pleas, and set the date for sentencing.

¶5 At sentencing, the circuit court adopted the State's recommendation, sentencing Shannon to three years of initial confinement followed by three years of extended supervision on the first count, and one year of initial confinement

followed by one year of extended supervision on the second and third counts both concurrent to the first count. The court expressed that it would have imposed a more lengthy sentence but for "the mitigating status of" Shannon's mental health challenges.

¶6 Shannon moved the circuit court for plea withdrawal on the bases that his counsel performed ineffectively and his pleas were not knowingly, intelligently, and voluntarily made. He alternatively sought resentencing on the ground that the sentencing court "relied on an improper factor" as it expressed that the NGI plea "was not supported by psychological professionals" despite the fact the second psychological professional supported this plea for some of the charges against Shannon. Following an evidentiary hearing on Shannon's motion, the court denied his requests. He now appeals.

## *Discussion*

¶7 On appeal, Shannon raises the same issues he raised in his postconviction motion. He fails to persuade on any.

¶8 To withdraw his plea postsentencing, Shannon must establish by clear and convincing evidence that a "manifest injustice" will occur if he is not permitted to withdraw his plea. *See State v. Finley*, 2016 WI 63, ¶58, 370 Wis. 2d 402, 882 N.W.2d 761 (citation omitted). One way in which a defendant can demonstrate a manifest injustice is to establish that trial counsel performed ineffectively with regard to the plea, *State v. Dillard*, 2014 WI 123, ¶84, 358 Wis. 2d 543, 859 N.W.2d 44; another way is to show that the plea was not entered knowingly, intelligently, or voluntarily, *Finley*, 370 Wis. 2d 402, ¶58.

¶9      Shannon claims his trial counsel was ineffective because "she advised Shannon to withdraw the NGI plea when Shannon has a history of untreated psychotic delusions that were present two days prior to the incident and there was a psychological report in support of the NGI plea." Shannon asserts "[a] reasonable attorney would not advise his or her client to withdraw his NGI plea and plead guilty in light of the severe untreated mental health issues."

¶10     To prove counsel ineffective, Shannon must demonstrate that she performed deficiently and the deficiency prejudiced him. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Pitsch*, 124 Wis. 2d 628, 633, 369 N.W.2d 711 (1985). If Shannon fails to make either of these showings, his claim fails. *See Strickland*, 466 U.S. at 687. We will affirm the circuit court's factual findings as long as the court did not clearly err, but we review de novo whether the facts meet the deficiency or prejudice standards. *State v. Kimbrough*, 2001 WI App 138, ¶27, 246 Wis. 2d 648, 630 N.W.2d 752.

¶11     Here, Shannon's ineffective assistance claim fails because the factual predicate for his deficiency showing does not exist. The insurmountable problem for Shannon is that following the evidentiary hearing on his postconviction motion, the circuit court found just the opposite of what Shannon claims on appeal; it found that counsel "*never* advised [Shannon] to withdraw his NGI plea." (Emphasis added.) As stated, on appeal we uphold factual findings that are not clearly erroneous, *Kimbrough*, 246 Wis. 2d 648, ¶27, and this finding is not clearly erroneous as it is supported by counsel's testimony at the postconviction evidentiary hearing.

¶12     At that hearing, Shannon's counsel testified that when the first court-appointed expert presented a report that did not support Shannon's NGI plea, she

secured the second expert, who, after his evaluation of Shannon and discussion with counsel, prepared a report that supported the NGI plea for some of the charges. Counsel testified this second expert had indicated to her that "when [Shannon] attempted to talk about very specific topics, that's when [his] mental illness would surface." When counsel subsequently tried to delve into those topics with Shannon, she observed

> the same effect that [the expert] had outlined …. *So that was why I really wanted Mr. Shannon to pursue the NGI.* But Mr. Shannon's decision was that he did not want to do that because he didn't believe he was mentally ill and he didn't … want[] to have a treatment order put in place on him to force him to engage in treatment he didn't believe he needed.

(Emphasis added.)

¶13 While counsel believed the second expert's opinion that Shannon suffers from "schizoaffective disorder and bipolar," Shannon indicated to her that "he believed that that was not a correct diagnosis and he wasn't mentally ill." Shannon had also expressed to counsel that he hoped he

> would be able to transfer out of this area and … reside in Missouri because he believed … all of his criminal issues arose out of this area. So he thought that if he were to leave this area [through an interstate compact if he were on probation or extended supervision], some of those issues would no longer be at play.

Counsel testified that she informed Shannon that if he succeeded with an NGI plea, transferring to Missouri likely would not be an option.

¶14 Counsel testified that prior to Shannon pleading, she discussed with him the various options available—proceeding on his NGI plea, withdrawing that plea and going to trial on the charges, or withdrawing the plea and pleading to the

three charges in accordance with the State's plea offer. Shannon chose the third option, indicating he "did not want to be under a treatment order [as] he did not believe that he was actually mentally ill."

¶15    Shannon also testified at the postconviction hearing, stating he knew prior to pleading that his expert's report supported his NGI plea[2] and that knowing this, he "wanted to go forward with [his] NGI." On this latter point, Shannon's postconviction testimony was in direct conflict with counsel's in that she testified, as indicated above, that Shannon was adamant that he did *not* want to maintain his NGI plea, most particularly because he did not want to be subject to a mental health treatment order. On this key conflict, the circuit court—the fact finder at the postconviction hearing—believed counsel's testimony over Shannon's, and we see no basis for questioning the court's decision finding counsel more credible than Shannon.[3] *See State v. Schmidt*, 2004 WI App 235, ¶13, 277 Wis. 2d 561, 691 N.W.2d 379 ("[W]e accept the credibility determinations made by the circuit court sitting as the trier of fact."). Furthermore, the court found credible counsel's testimony that she "wanted Mr. Shannon to pursue the NGI." Shannon has failed to demonstrate that the court's postconviction factual finding that counsel "never advised [Shannon] to withdraw his NGI plea" is clearly erroneous. With that, Shannon's ineffective assistance claim fails because his predicate for it—that counsel "advised [him] to withdraw the NGI plea"—does not exist.

---

[2] Shannon acknowledged at the postconviction hearing that he had discussed his expert's report with counsel, but he complained that she "did not give … [him] a copy."

[3] Consistent with counsel's postconviction testimony that Shannon wanted to withdraw the NGI plea and accept the State's plea offer, Shannon testified at the postconviction hearing that he thought that if he entered guilty pleas, he would "get work release" and "be out in like … six to nine months," adding that he was aware the "PSIs [presentence investigations] … recommended probation."

¶16    Shannon's next claim, that his plea was not knowingly, intelligently, and voluntarily entered, fares no better.    Similar to the ineffective assistance question, we will affirm the circuit court's factual findings unless those findings are clearly erroneous, but whether, based on the facts, the defendant knowingly, intelligently, and voluntarily entered his plea is a question we review independently. *Finley*, 370 Wis. 2d 402, ¶59.

¶17    To begin, this claim fails right out of the gate because it is conclusory, insufficiently developed, and not supported with legal argument or authority. *See Associates Fin. Servs. Co. of Wis., Inc. v. Brown*, 2002 WI App 300, ¶4 n.3, 258 Wis. 2d 915, 656 N.W.2d 56 (declining to address inadequately briefed issues as they were conclusory and undeveloped); *State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (arguments unsupported by relevant legal authority will not be considered).    In the six sentences Shannon pens on this issue, he asserts his postconviction testimony shows that "he was not taking the proper medication at the time he entered the plea," "he was confused about what he was doing," and "untreated mental health issues were not completely dormant at the time of the guilty plea."    As support, Shannon relies upon his response to the circuit court's question at the postconviction hearing as to whether he was honest at the plea hearing when he told the court he understood everything that was taking place.    To that inquiry, Shannon responded:    "I was confused, because I was not on my proper medication.    And … I do remember the hearing; but like I said, I had just recently had some serious delusions and some problems and I was not, I was not comfortable … sitting up there."    Shannon does not explain, however, how this meets the standard for showing his pleas were not knowingly, intelligently, or voluntarily made.    Moreover, as the State points out,

Shannon "never identifies in his brief what he did not comprehend at the plea hearing."

¶18 Further defeating Shannon's claim is the fact that the circuit court found, both at the time of the plea hearing and following postconviction testimony, that Shannon *did* understand the plea proceedings at the time he entered his pleas. This finding is supported by the testimony as Shannon's counsel confirmed at the postconviction hearing that while she knew Shannon "still had underlying mental health issues," he appeared "competent and lucid" at the plea hearing, and if she had any concerns about his pleas, she would have conveyed those to the court, but she had no such concerns. Shannon's plea hearing colloquy with the court further supports the court's finding that he was fully engaged in and aware of what he was doing at that hearing, as our review of the colloquy shows his responses to the court's questions were entirely appropriate and give no hint of any lack of understanding.[4] Furthermore, at that plea hearing—before Shannon was sentenced or made any postconviction claim—Shannon's counsel confirmed for the court that she believed Shannon "underst[ood] these proceedings" and was "freely, knowingly, intelligently and voluntarily waiving his rights and pleading guilty."

---

[4] At the plea hearing, Shannon confirmed he had sufficient time to discuss his plea with counsel; had no remaining questions for counsel; was aware his sentence on each count could be increased due to him having a prior felony conviction; had read through the facts in the criminal complaint and agreed with the court using those facts in support of his guilty pleas; understood everything in the plea questionnaire form and had personally signed it after reading through it with counsel; understood his constitutional rights identified on the form and had read through each of them with his attorney; understood he was giving up these rights, including his right to a jury trial, by pleading; went through with counsel the elements of the crimes to which he was pleading and understood them; believed the State would have been able to prove him guilty; had not received any promises or threats to induce him to plead; was not at that time receiving any mental health treatment; had not had alcohol, medicine or drugs within the prior twenty-four hours; was aware he still would not be permitted to possess a firearm and would lose his right to vote until his civil rights were restored; and was choosing to withdraw his NGI plea and plead guilty to the three charges.

Indeed, at the postconviction hearing, Shannon himself confirmed that he "*w*[*as*] able to understand the judge's questions" at the plea hearing. (Emphasis added.) Shannon's assertion that he did not knowingly, intelligently, and voluntarily enter his pleas fails. He has failed to show by clear and convincing evidence that a manifest injustice will occur if he is not permitted to withdraw his pleas.

¶19    Lastly, Shannon argues, in five sentences, that the circuit court erred in denying his postconviction motion for resentencing. He asserts the court relied upon an "improper factor" "when it said the NGI plea was not supported by psychological professionals when, in fact, the NGI plea was supported by psychological professionals." To prevail on appeal, Shannon must establish by clear and convincing evidence that the circuit court relied upon an improper factor. *See State v. Harris*, 2010 WI 79, ¶¶30, 34, 326 Wis. 2d 685, 786 N.W.2d 409. He fails to establish this.

¶20    Unquestionably, the circuit court considered only proper factors in sentencing Shannon. It focused on the danger Shannon posed to the community and the related need to protect the public in light of his actions in this case and other criminal activity, punishment for his physical attacks on and threats toward law enforcement officers in this case, and the need to deter him and others from similar criminal behavior in the future. The court also acknowledged Shannon's clear need for rehabilitation, but expressed that such rehabilitation cannot trump the need to protect the public. In considering Shannon's dangerousness, the court very appropriately considered whether Shannon had the ability to appreciate the wrongfulness of his actions or conform his conduct to the requirements of law at the time of his crimes and, related to that, considered the first expert's opinion that she could not support Shannon's NGI plea.

¶21    In his brief-in-chief, Shannon focuses on a single sentence uttered by the circuit court at sentencing: "And as I already said, the NGI plea was not supported by psychological professionals." He develops no argument and cites no supportive law to show us that it was "improper" for the court to consider whether or not his NGI plea was supported by psychological professionals. Thus, he loses on the "improper factor" issue right off the bat. *See Pettit*, 171 Wis. 2d at 646-47 (arguments undeveloped or unsupported by relevant legal authority will not be considered).

¶22    What Shannon may really be suggesting is that he was sentenced based upon inaccurate information, as he points out in briefing that the second expert opined that he *could* support an NGI plea for Shannon on three of the five charges. Shannon develops no argument for this as well—stating only, "In addition, the court was relying on inaccurate facts regarding the support of the NGI plea"—so an argument that the court relied on inaccurate information cannot prevail either.

¶23    That said, we point out that in stating, "*And as I already said*, the NGI plea was not supported by psychological professionals," the circuit court could only have been referring to earlier sentencing comments it made in which it stated, "[B]ut there was an NGI plea entered and that evaluator, the psychiatrist said it's not supported, and you withdrew that plea. You were in your right mind when you committed these offenses. [The expert] found … [i]t was the intoxication." (Emphasis added.) So in saying the NGI plea was "not supported by psychological professionals," the court was referring back to its comment about the court-appointed expert who opined that she could not support the NGI plea. And, as the court noted, Shannon withdrew that plea, so the court correctly surmised that there was no supportable legal basis to excuse Shannon's crimes at

11

sentencing on the ground that he could not appreciate the wrongfulness of his criminal acts or conform his conduct to the requirements of law.

¶24    Furthermore, the circuit court made it clear that despite the lack of support for an NGI plea by the one expert the court referenced, it nonetheless recognized Shannon's struggles with mental health issues, including around the time of the offenses in this case, and expressed that it almost certainly would have sentenced him to more time in prison if it was not for those issues.[5]  Thus, as the State points out, even if it could be said that the court relied upon inaccurate information in sentencing Shannon because the court commented that "the NGI plea was not supported by psychological professional*s*," plural (emphasis added), and yet there was one psychological professional who did support Shannon's NGI plea for some of his crimes, such reliance was harmless because the court clearly recognized Shannon's ongoing mental health issues and lessened his prison sentence because of this.  There is no reason to believe Shannon would have received a better sentence than he did if the court had made explicit reference at sentencing to the second expert's opinion, and Shannon does not even attempt to make an argument to suggest otherwise.  *See **State v. Payette***, 2008 WI App 106, ¶46, 313 Wis. 2d 39, 756 N.W.2d 423  ("An error is harmless if there is no reasonable probability that it contributed to the outcome." (citation omitted)).

---

[5] The circuit court stated, "[T]he mental health status is a mitigating factor here.  But … how it mitigates it is how much time the Court is going to impose, not whether or not it's probation or prison" and "as I said, if it weren't for the mitigating status of your mental health, I think I would be putting more" prison time than the recommendation of the State, which recommendation the court adopted.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2017-18).